REVISED DECEMBER 13, 2001

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

**No. 99-41246**
_____

**JOSE GARCIA BRISENO,**

**Petitioner-Appellant,**

**VERSUS**

**JANIE COCKRELL, DIRECTOR, TEXAS DEPARTMENT OF**
**CRIMINAL JUSTICE, INSTITUTIONAL DIVISION,**

**Respondent-Appellee.**

_____

Appeal from the United States District Court
For the Southern District of Texas
_____

November 26, 2001

Before HIGGINBOTHAM, DeMOSS, and STEWART, Circuit Judges.

DeMOSS, Circuit Judge:

In this death penalty habeas appeal from Texas, Petitioner-Appellant Jose Garcia Briseno seeks review of the district court's judgment denying his claim that his direct appellate counsel rendered ineffective assistance. The district court granted Briseno a Certificate of Appealability ("COA") on that issue. For the reasons set forth below, we affirm the district court's

judgment.

## I. BACKGROUND

In late 1990, Ben Murray, the Sheriff of Dimmit County, was investigating a burglary case. The Sheriff met with Briseno to enlist his help in solving the burglaries. Several weeks later, on Sunday, January 6, 1991, the Sheriff was found dead in his home, with numerous stab wounds and a bullet wound to the head. At trial, testimony revealed that over five hundred dollars in cash had been taken from the Sheriff. Additionally, two of his pistols were missing.

When Briseno was arrested, he had bandages on both hands. He told police that he had received the cuts in a fight on the previous Friday. While being held, he attempted to escape with several other inmates, including Ricardo Basaldua. After their capture, Basaldua told authorities statements Briseno made about the Sheriff's murder. Basaldua testified that on the night of the Sheriff's murder, Briseno and another defendant, Alberto Gonzales, appeared at the Sheriff's home offering to sell some rings. Briseno and Gonzales did not have any rings for sale, but used the ring story to gain entry to the Sheriff's home. A struggle began, and they stabbed the Sheriff. When Briseno and Gonzales could not take the Sheriff down, Briseno grabbed the Sheriff's gun off a table and shot the Sheriff. Afterwards, Briseno and Gonzales stole

some money from the Sheriff's home and hid it. Basaldua also testified that during the escape Briseno showed him the spot where Briseno had buried the gun used to kill the Sheriff. Briseno dug up the gun but soon disposed of it in the same general area before the police caught the escapees. Upon being recaptured, Basaldua led the officers to the location where Briseno had hidden the gun, and the gun was recovered.

At trial, the state introduced evidence demonstrating that blood taken from the Sheriff's carpet compared positively with that of Briseno.[1] Additional evidence submitted at trial included bloody clothing that was found behind a sofa in a shed in which Briseno had been staying. That clothing contained enzyme markers consistent with Briseno's and the Sheriff's. Furthermore, a bullet of the same caliber and brand as that used in the stolen pistol utilized to kill the Sheriff was discovered at the shed. Moreover, a bloodhound tracked a lighter found near the Sheriff's residence to the shed where Briseno had been staying.

A jury convicted Briseno of Sheriff Murray's murder and sentenced him to death. On appeal, court-appointed counsel George Scharmen represented Briseno. Briseno filed his brief on appeal on June 16, 1993. The Texas Court of Criminal Appeals affirmed the conviction and death sentence in an unpublished opinion on June 29,

---

[1]The state's serologist testified that the enzyme markers found in the blood are shared by Briseno and a little more than one percent of the Hispanic population in the United States.

1994. The United States Supreme Court denied Briseno's petition for writ of certiorari on February 21, 1995.

On July 31, 1995, Briseno initiated state habeas corpus proceedings, with Scharmen again as his attorney.[2] The trial court conducted an evidentiary hearing on some of Briseno's claims raised in the state petition. The trial court entered findings of fact and conclusions of law, which the Court of Criminal Appeals adopted. The Court of Criminal Appeals denied Briseno's application on November 27, 1996.

Thereafter, on November 28, 1997, Briseno timely filed a petition for writ of habeas corpus in federal court, raising three claims for relief.[3] Those claims were that: 1) Briseno's trial counsel was ineffective during the penalty phase of trial due to inadequate preparation and lack of investigation of mitigating circumstances; 2) Briseno's due process rights were violated because he was unable to obtain assistance and information from his former defense attorney; and 3) Briseno's appellate attorney was ineffective for failing to challenge on appeal the trial court's denial of a defense motion for an expert serologist. The district court granted summary judgment and denied relief with respect to the first two claims and scheduled oral argument and supplemental

[2]Scharmen had moved for another attorney for Briseno, but that motion was denied.

[3]Because Briseno filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act, that Act governs his petition.

4

briefing on the third claim of ineffective assistance of direct appeal counsel. Later, the district court granted the director's motion for summary judgment and denied relief with respect to the last claim.

Briseno timely filed a notice of appeal. Subsequently, the district court granted a COA with respect to Briseno's third claim.


## II. DISCUSSION

Before arguing the issue to which the district court granted a COA, Briseno raises two preliminary issues concerning 1) the standard of prejudice to be utilized in an ineffective assistance of direct appellate counsel claim, and 2) the legality and parameters of 28 U.S.C. § 2254(d)(1), the statutory section prescribing the standard of review to be accorded mixed questions of law and fact. We review these matters prior to addressing the merits of the issue granted a COA.

In denying Briseno's third claim, the district court assumed for purposes of its order that Briseno's appellate counsel's failure to raise the denial of the blood expert on direct appeal fell below the objective standard of reasonable conduct expected of appellate counsel. Moreover, the district court assumed that the trial court's denial of a blood expert constituted error under *Ake v. Oklahoma*, 105 S. Ct. 1087 (1985), and that the Texas Court of Criminal Appeals would have reversed the trial court had that issue

5

been raised on direct appeal. Nevertheless, the district court concluded that Briseno's third claim did not establish an ineffective assistance of counsel claim because it did not rise to the level of constitutional error contemplated by *Goodwin v. Johnson*, 132 F.3d 162, 170 (5th Cir. 1998).

Briseno asserts that the standard of prejudice to be utilized in an ineffective assistance of direct appellate counsel claim as stated in *Goodwin* conflicts with the Supreme Court's recent decision in *Smith v. Robbins*, 120 S. Ct. 746 (2000). In *Goodwin*, we clarified the prejudice requirement of the test to show ineffective assistance of counsel, which the Supreme Court announced in *Strickland v. Washington*, 104 S. Ct. 2052 (1984). Under *Strickland*, to prove that counsel afforded ineffective assistance, a petitioner must show 1) that his attorney's performance was deficient, and 2) that such deficiency prejudiced the defense. *Id.* at 2064. *Goodwin* held that the presence or absence of *Strickland* prejudice as a result of unconstitutionally deficient performance of counsel at either the trial or appellate level hinges upon the fairness of the trial and the reliability of the judgment of conviction resulting therefrom. *Goodwin*, 132 F.3d at 174. That is, we rejected the outcome determinative aspect of petitioner's argument that *Strickland* prejudice is established if there is a reasonable probability that the allegedly deficient performance would have caused a reversal on direct appeal.

6

Instead, the focus had to be on the fairness of the proceeding and the reliability of its result. *Id.* at 176. "To the extent that the appellate process is merely a vehicle for correcting errors at trial, the fairness and reliability of an appeal are necessarily functions of the fairness and reliability of the trial." *Id.*

Recently, in *Smith v. Robbins*, 120 S. Ct. 746 (2000), the Supreme Court appears to have rejected *Goodwin*'s holding. Indeed, the director concedes this point. *Smith* generally involved whether some of the Court's statements in *Anders v. California*, 87 S. Ct. 1396 (1967), reciting an acceptable procedure for treating frivolous appeals by criminal defendants, were obligatory upon the states and whether California's procedure, as stated in *People v. Wende*, 600 P.2d 1071, 1074-75 (Cal. 1979), violated the Fourteenth Amendment. Although the Court concluded that the *Anders* procedure was not obligatory and that California's *Wende* procedure was not constitutionally infirm, *see Smith*, 120 S. Ct. at 763, it noted that the petitioner's appeal may not have been frivolous and that he may have been entitled to more than a *Wende* brief. In remanding the case, the Court reiterated *Strickland* as the appropriate standard. *Id.* at 764. And it stated that to demonstrate prejudice, the petitioner had to show a reasonable probability that, but for his counsel's unreasonable failure (in this case, to file a merits brief), he would have prevailed on his appeal. *Id.*

7

Briseno's second preliminary issue relates to the legality and parameters of 28 U.S.C. § 2254(d)(1),[4] the statutory section prescribing the standard of review to be accorded mixed questions of law and fact. In *Williams v. Taylor*, 120 S. Ct. 1495 (2000), the Supreme Court attempted to clarify the murky confines of § 2254(d)(1). In Justice O'Connor's Part II majority opinion, the Court held that under the "contrary to" clause, a federal habeas court may grant the writ of habeas corpus if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Id.* at 1523. Moreover, the Court concluded that under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Id.* In making the "unreasonable application" inquiry, a federal habeas court should ask whether the

---

[4]Section 2254(d)(1) reads:
An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . .

state court's application of clearly established federal law was objectively, not subjectively, unreasonable.  *Id.* at 1521.

With Briseno's two preliminary issues in mind, we now address the merits of his appeal.  The district court specifically granted a COA as to whether Briseno's direct appellate counsel rendered ineffective assistance by failing to raise the trial court's denial of the defense motion for a blood expert as a violation of *Ake v. Oklahoma*.

In *Ake*, the Supreme Court held that when a defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, the Constitution requires that a state provide access to a psychiatrist's assistance on that issue if the defendant cannot otherwise afford one.  *Ake*, 105 S. Ct. at 1091-92.  Briseno contends that under *Ake*, indigent defendants must have access to the raw materials necessary to present an effective defense and that he was denied that access when the trial court denied his motion for a blood expert who could have contested the state expert's testimony linking Briseno's blood to the crime scene and the Sheriff's blood to Briseno's home.  Because his direct appellate counsel failed to raise the *Ake* claim on appeal, Briseno maintains that he was provided ineffective assistance of counsel.

We disagree. As the director maintains, Briseno's appellate counsel appears not to have performed deficiently. At the time of Briseno's appeal, neither the Supreme Court or the Texas Court of Criminal Appeals had explicitly extended *Ake* to the area of serology. Admittedly, the Court of Criminal Appeals ultimately extended the *Ake* rationale to fields other than psychiatry. *See Rey v. State*, 897 S.W.2d 333, 338 (Tex. Crim. App. 1995) ("*Ake* is not limited to psychiatric experts . . . ."). And various other courts had recognized the applicability of *Ake* in contexts other than psychiatry prior to Briseno having filed his direct appellate brief. *See*, *e.g.*, *Terry v. Rees*, 985 F.2d 283, 284 (6th Cir. 1993); *Little v. Armontrout*, 835 F.2d 1240, 1243 (8th Cir. 1987). In light of those developments, one could argue that, notwithstanding the lack of an explicit pre-appeal holding by the Supreme Court or the Court of Criminal Appeals, the failure to raise the *Ake* issue amounted to appellate representation that fell below an objective standard of reasonableness. But there is a qualitative difference between expert psychiatric testimony required to prepare an insanity defense and expert testimony concerning serology. In the former, testimony from experts can be crucial as there is often no single, accurate psychiatric conclusion on legal insanity. *Ake*, 105 S. Ct. at 1095. Psychiatry is not an exact science, and juries remain the primary factfinders on legal insanity and "must resolve differences in opinion within

10

the psychiatric profession on the basis of the evidence offered by each party." *Id.* In the case of serology, a blood sample either has a certain marker, which fits within a certain group in a statistical compilation of the population, or it does not. There can be problems associated with the handling and testing of samples and some differences of opinion may arise, but the vagaries of human behavior are not rampant within serology. Enough of a distinction between expert psychiatric testimony on insanity and expert testimony on serology exists to suggest a tenable, and not unreasonable, basis for believing that **Ake** would not necessarily be extended.

Combine that with the high probability that the trial counsel wanted a DNA expert, and not a serologist, and we may rightfully conclude that the appellate counsel did not deficiently perform by failing to raise an **Ake** claim with respect to the need for a serologist. Briseno would only have had a valid **Ake** claim if the state trial court had actually denied the trial counsel's motion for a blood expert. The state habeas court, however, found: 1) that Briseno "sought appointment by the trial court of a 'DNA expert'; and not merely the appointment of an expert in serology"; and 2) that his motion is "premised on the notion that 'the prosecution would be introducing the DNA evidence'." Those findings are presumed to be correct unless Briseno rebuts with

11

clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).[5] Reviewing the record, we believe that Briseno has not satisfied that high burden. Briseno's trial counsel filed a motion entitled "Defendant's Ex-Parte Motion for Independent Expert Analysis of Blood Samples in State's Possession," and that motion does raise the need for an "independent blood expert analyst . . . to prepare a relevant defense." But while that motion states that "other analysis of blood is possible," it specifically mentions DNA testing and lists as suggested experts two prominent legal experts in the field of DNA testing, Professors Barry Scheck and Peter Neufeld. Furthermore, at the pre-trial hearing on Briseno's motion, his trial counsel and the state talked at length about the cost of a DNA analysis and how the state had already done a test through the FBI, who indicated that the sample was too degraded for proper DNA analysis. Because the sample had been degraded, the state insisted that Briseno did not need a DNA expert. In other words, the hearing did not center on the need for a serologist; rather, it focused on the more specific area of DNA testing. Hence, the record is, at best, unclear, and we cannot overrule the presumption of correctness afforded to the state habeas court's

---

[5]Section 2254(e)(1) provides:
In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

findings that Briseno essentially sought a DNA, not blood, expert.[6] With those findings in mind, we must conclude that the trial counsel did not effectively inform the trial court of the need for a serology expert to contest the state's expert. That failure, in addition to the possibility that *Ake* did not cover non-psychiatric expert testimony such as those involving serologists, indicates that the appellate counsel's decision not to raise an *Ake* claim on direct appeal may not have been erroneous. Accordingly, Briseno's appellate counsel may not have performed deficiently.

Even if Briseno's appellate counsel had performed deficiently, we do not believe that any prejudice necessarily resulted from that deficiency. To establish prejudice, i.e., a reasonable probability that the outcome of the direct appeal would have been different, Briseno would have had to show 1) that the Texas Court of Criminal Appeals would have held that the trial court's denial of his motion for a blood expert was error, and 2) that the Court of Criminal Appeals would have vacated or reversed based on that error.

---

[6]The fact that Briseno did not receive a DNA expert is not a predicate for his *Ake* claim. First, he asserts no such basis for his *Ake* claim. Second, the government did not present any DNA evidence at trial, and the sample was either too small or degraded for a proper analysis. Therefore, Briseno did not have a sufficient interest or basis to receive DNA expert assistance.

Assuming that the Court of Criminal Appeals would have held that the trial court's denial was erroneous,[7] we nonetheless conclude that there was no **Strickland** prejudice.

At the time of Briseno's appeal, former Texas Rule of Appellate Procedure 81(b)(2) provided for a harmless error standard of review.[8] It stated:

> If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.

We realize that the Court of Criminal Appeals in **Rey** held that under Texas law, **Ake** error is structural and cannot be evaluated for harm. *See* **Rey**, 897 S.W.2d at 346. In **Cain v. State**, 947 S.W.2d 262 (Tex. Crim. App. 1997), however, the Court of Criminal

---

[7]We make this assumption because, in all likelihood, if the inability to recognize that **Ake** would be extended to non-psychiatric experts is deficient performance, then that suggests that the Court of Criminal Appeals would have found the trial court's denial to be erroneous. That is, as the state conceded at oral argument, a finding of prong one under **Strickland** necessarily means that there was error. Moreover, we note that the Court of Criminal Appeals ultimately did find **Ake** applicable in other contexts. *See* **Rey**, 897 S.W.2d at 338.

[8]Rule 44.2(a) of the Texas Rules of Appellate Procedure replaced Rule 81(b)(2). Texas courts apply the harmless error standard of review under both rules in the same manner. *See* **Mosley v. State**, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998). Rule 44.2(a) provides:
  If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment.

14

Appeals held that "[e]xcept for certain federal constitutional errors labeled by the United States Supreme Court as 'structural,' no error . . . is categorically immune to a harmless error analysis." *Id.* at 264. The Supreme Court has never explicitly stated that *Ake* error is structural. Therefore, we may conclude that *Cain* essentially overruled *Rey* with respect to whether *Ake* error is subject to harmless error analysis.[9] *See Lighteard v. State*, 982 S.W.2d 532, 535 (Tex. App.–San Antonio 1998, pet. ref'd) (applying harmless error rule to *Ake* claim because *Cain* was subsequent to *Rey* and because the Supreme Court has never labeled an *Ake* claim as a structural error); *cf. Linton v. State*, 15 S.W.3d 615, 620 (Tex. App.-Houston [14th Dist.] 2000, pet. ref'd) (holding that because of *Cain* and the lack of direct Supreme Court precedent, a violation of Texas Code of Criminal Procedure article 36.01 is subject to harmless error analysis despite prior Court of Criminal Appeals ruling concluding that such a violation is not reviewed for harm). *But see Williams v. State*, 958 S.W.2d 186, 194 (Tex. Crim. App. 1997) (noting that *Rey*'s holding that an *Ake* claim is structural cannot be applied to conclude that a trial court's error in failing to allow an ex parte *Ake* motion is also structural in nature).

---

[9]Briseno concedes this point in his initial appellate brief.

Notwithstanding the apparent change in Texas law, Briseno argues that *Rey*, not *Cain*, should control. He asserts that the Court of Criminal Appeals would undoubtedly have reversed his case because that court, soon after the completion of his direct appeal, made its structural error ruling in *Rey*. That is, the crux of *Rey*'s holding on harmless error regarding *Ake* claims was in its ascendancy, and Briseno believes that he should receive the benefit of that occurrence.

We find Briseno's argument unavailing. At the time of his direct appeal, *Rey* had yet to be released, and there was no actual holding that an *Ake* error is structural. Moreover, in *Lockhart v. Fretwell*, 113 S. Ct. 838, (1993), the Supreme Court foreclosed a state habeas prisoner's ability to raise, as an ineffective assistance of counsel claim, his attorney's failure to introduce an objection that under circuit precedent at the time of sentencing would have resulted in a vacatur of the sentence, but which by the time of the habeas appeal would not have resulted in a vacatur because that precedent had been overruled. Here, *Cain* essentially overruled the prior *Rey* precedent regarding harmless error review of *Ake* claims. Even if Briseno would have received the benefits of a *Rey* type ruling during his direct appeal, *Fretwell* suggests that the current *Cain* holding on harmless error review controls over this habeas petition. Consequently, to determine whether any *Strickland* prejudice arose from the appellate counsel's failure to

16

raise the *Ake* claim, we evaluate for harmless error.

Under the harmless error standard of review applicable in Texas, the key question is "'whether a rational trier of fact might have reached a different result if the error and its effects had not resulted.'" *Burks v. State*, 876 S.W.2d 877, 905 (Tex. Crim. App. 1994). "An error is harmless if it did not interfere with the integrity of the trial process sufficiently to affect the outcome of the trial." *Id.* Reviewing the record, we conclude that any error on the part of the appellate counsel in failing to raise an *Ake* claim with respect to the trial court's denial of the alleged motion for a blood expert was harmless. The remaining evidence, such as the discovery of a bloody bullet that was of the same brand of ammunition as that found in the Sheriff's stolen pistol, the bloodhound's tracking from the Sheriff's residence to Briseno's shed, and the bloody clothing, would have been sufficient to show that any *Ake* error was harmless beyond a reasonable doubt.

On the other hand, Briseno argues that he can plausibly explain all of those items of evidence. According to Briseno, those incriminating pieces of evidence may be attributed to Gonzalez, the co-defendant. Briseno charges that Gonzalez had a fight with the Sheriff, came to Briseno's shed leaving a trail for the bloodhound, and discarded the clothing and the bullet. Thus, Briseno maintains that but for the state serologist's testimony attaching a high probability that, among other things, Briseno's

17

blood was at the Sheriff's home, he can offer a strong and reasonable case supporting his innocence.

The state, however, presented the testimony of Basaldua, to whom Briseno related the accounts of the Sheriff's murder. Based on what Basaldua learned from Briseno, the state recovered the pistol that apparently killed the Sheriff. Additionally, Briseno had on his hands severe cuts, indicative of a vicious knife fight, that others noted Briseno did not have before the night of the murder. Those damaging facts plus the evidence discovered at the shed and the bloodhound's tracking lead us to believe that any *Ake* error was harmless beyond a reasonable doubt. Accordingly, even if Briseno's appellate counsel performed deficiently, we conclude that the error was harmless and that no prejudice resulted.

## III. CONCLUSION

For the foregoing reasons, we affirm the district court's judgment denying Briseno's claim that his direct appellate counsel rendered ineffective assistance by failing to raise an *Ake* claim.