UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 01-21080
_____

RICHARD HEAD WILLIAMS,

Petitioner-Appellant,

v.

JANIE COCKRELL, DIRECTOR,
TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
INSTITUTIONAL DIVISION,

Respondent-Appellee.

_____

Appeal from the United States District Court for the
Southern District of Texas
(4:00-CV-2748)
_____

July 25, 2002

Before DAVIS, BENAVIDES, and STEWART, Circuit Judges.

PER CURIAM:[*]

Petitioner Richard Head Williams (Williams), convicted of capital murder in Texas and

sentenced to death, requests from this Court a Certificate of Appealability (COA) pursuant to 28

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

U.S.C. § 2253(c)(2). Williams argues that counsel rendered ineffective assistance based on the failure to: request a jury instruction on the lesser included offenses of murder or manslaughter; present an intoxication defense during the guilt phase; adequately brief an argument on direct appeal with respect to a juror and a prospective juror; and raise the issue of ineffective assistance of trial counsel on direct appeal. Finding that Williams has not made a substantial showing of the denial of a constitutional right with respect to his claims of ineffective assistance of counsel, we DENY a COA.

## I.    BACKGROUND

### A.    Statement of Facts[1]

The evidence presented at trial shows that the victim, Jeannette Williams (Jeannette), was forty-seven years old and had been confined to a wheel chair for the past twenty-two years as the result of having been shot by her husband. Jeannette was on pain medication and had also become addicted to crack cocaine. She had been friends with Bruce and Michelle Gilmore and had lived with the Gilmores at various times. Mr. Gilmore had taken out a $25,000 life insurance policy on Jeannette with the policy designating him as the beneficiary.

After being released from a ten-year prison sentence, Williams (who was not related to the victim) went to live with a friend named Jerrol Blueford. Jeannette and the Gilmores were also friends with Blueford. Several days prior to the murder, Bruce Gilmore approached Blueford about killing Jeannette so that as beneficiary he could collect the life insurance proceeds. Blueford refused the offer, but he introduced Bruce Gilmore to Williams. Bruce Gilmore promised to pay Williams $12,000 if he committed the murder. Williams agreed to kill Jeannette for $12,000.

---

[1] The facts surrounding the offense are taken nearly verbatim from the unpublished opinion of the Texas Court of Criminal Appeals. *Williams v. State,* No. 72,965 (Tex.Crim.App. May 12, 1999).

On the day of the murder, Williams, Jeannette, and the Gilmores drove to the Third Ward in Houston on the pretext that they were going to buy cocaine for the two women to smoke. While Bruce Gilmore stayed in the car, Williams and Michelle Gilmore pushed Jeannette in her wheel chair down the street toward the corner to supposedly purchase the drugs. Williams then grabbed Jeannette's forehead from behind and using a nine-inch steak knife slit the victim's throat. She fell from her wheel chair whereupon Williams repeatedly stabbed her in the chest with the knife. Bruce and Michelle Gilmore drove off leaving Williams at the crime scene. The Gilmores drove to Blueford's house and told him that Williams was crazy and how Williams murdered Jeannette. The Gilmores gave Blueford $400 to give to Williams as payment for the murder. They also instructed him not to tell Williams where they were headed.

Williams returned to Blueford's house a short while later. His hand was wrapped in a blood soaked towel. Williams asked Blueford if the Gilmores had left anything for him. Blueford gave Williams the $400 given to him by the Gilmores. Williams became noticeably upset over the amount of money. Williams told Blueford that he would find and murder the Gilmores because they owed him more money.

The officers responding to the crime scene initially believed the victim was killed in a hit and run accident. The victim was lying in the street in a pool of blood with her wheel chair approximately three feet away. However, when the body was turned over, the officers discovered the gaping wound to the neck and numerous stab wounds to the chest. According to the medical examiner, the wound to the victim's throat severed her jugular vein and windpipe. It was determined that the victim suffocated and bled to death. The autopsy revealed that the wound was 1 1/4 inches wide and 5 3/4 inches long.

3

The investigation of the murder provided several phone numbers. The numbers led to the Gilmores who in turn implicated Williams. Williams gave a video taped confession of the murder.

B.    Procedural History

A Harris County, Texas jury found Williams guilty of capital murder (murder for remuneration) in violation of § 19.03(a)(3) of the Texas Penal Code. After the punishment phase of the trial, the jury answered the special issues set forth in Article 37.071(b) of the Texas Code of Criminal Procedure, and in accordance with Texas law, the trial court sentenced him to death. In an unpublished opinion, the Texas Court of Criminal Appeals affirmed the conviction and sentence. *Williams v. State,* No. 72,965 (Tex.Crim.App. May 12, 1999).

Williams also filed an application for writ of habeas corpus in state court pursuant to article 11.071 of the Texas Code of Criminal Procedure. The state trial court recommended that the application be denied. The Court of Criminal Appeals denied relief "[b]ased upon the trial court's findings and [its] own review." *Ex parte Williams,* No. 43,907-01 (Tex.Crim.App. Feb. 9, 2000).

Williams filed the instant federal habeas petition on August 4, 2000. The district court denied habeas relief and a COA. Williams now appeals, requesting a COA from this Court.

II.    STANDARD OF REVIEW

Williams filed the instant section 2254 application for habeas relief after the April 24, 1996 effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA). His application is therefore subject to the AEDPA. *Lindh v. Murphy,* 521 U.S. 320, 336, 117 S.Ct. 2059, 2068 (1997). Under the AEDPA, a petitioner must obtain a COA. 28 U.S.C. § 2253(c)(2). A COA will be granted only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a petitioner "must demonstrate that the issues are

4

debatable among jurists of reason; that a court *could* resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4, 103 S.Ct. 3383, 3394 n.4 (1983) (citation and internal quotation marks omitted). Any doubt regarding whether to grant a COA is resolved in favor of the petitioner, and the severity of the penalty may be considered in making this determination. *Fuller v. Johnson*, 114 F.3d 491, 495 (5th Cir. 1997).

To determine whether a COA should be granted, we must be mindful of the deferential scheme set forth in the AEDPA. *Hill v. Johnson,* 210 F.3d 481, 484-85 (5th Cir. 2000). Pursuant to 28 U.S.C. § 2254(d), we defer to a state court's adjudication of a petitioner's claims on the merits unless the state court's decision was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts. *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1519-20 (2000). A state court's decision constitutes an unreasonable application of clearly established federal law if it is objectively unreasonable. *Id.* at 1521. Additionally, pursuant to section 2254(e)(1), state court findings of fact are presumed t o be correct, and the petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Valdez v. Cockrell,* 274 F.3d 941, 947 (5th Cir. 2001).

III.    ANALYSIS

A.    Failure to Request Jury Instructions

Williams first argues that trial counsel rendered ineffective assistance by failing to request jury instructions with respect to the lesser included offenses of murder and manslaughter. The Supreme Court has recently reaffirmed the familiar two-prong test for ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*(Terry ) Williams v. Taylor,* 120 S.Ct. 1495, 1511 (2000) (quoting *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052 (1984)). To demonstrate that counsel was ineffective, a petitioner must establish that counsel's representation fell below an objective standard of reasonableness. *See id.* To show prejudice, he must show that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *See id.* at 1511-12.

In a capital murder trial, a defendant is constitutionally entitled to instructions on lesser included offenses only if a "rational juror, given all the facts, [could acquit him] of capital murder and convict[ ] him of a lesser included offense." *Cordova v. Lynaugh*, 838 F.2d 764, 767 (5th Cir. 1988). "This necessarily requires a showing that the facts of the case and the laws of the State warrant such an instruction." *Hill v. Black*, 920 F.2d 249, 252 (5th Cir.1990), *modified*, 932 F.2d 369 (5th Cir.1991).

As previously set forth, Williams was convicted of capital murder in violation of § 19.03(a)(3) of the Texas Penal Code, which prohibits "committing the murder for remuneration or the promise

6

of remuneration. . . ." A person commits the offense of murder when he "intentionally or knowingly causes the death of an individual." Section 19.02(b)(1). A person commits manslaughter "if he recklessly causes the death of an individual." Section 19.04(a).

With respect to his contention that counsel should have requested a jury instruction on manslaughter, there is absolutely no evidence to indicate that Williams "recklessly" caused the death of the victim. Although Williams points to evidence that the Gilmores and Jeannette argued, the evidence does not show that he was involved in any dispute with Jeannette. He also relies on certain evidence indicating that he and the victim had been using alcohol and/or cocaine and marijuana. As set forth in the next section of this opinion, section 8.04(a) of the Texas Penal Code provides that voluntary intoxication does not present a defense.

With respect to his contention that counsel should have requested a jury instruction on intentional or knowing murder, contrary to Williams's contentions, based on the evidence introduced at trial no rational juror would believe that he intentionally or knowingly murdered Jeanette, but did not do it for remuneration or the promise of remuneration. Indeed, Williams's confession demonstrates that he murdered Jeanette after being promised (and shown) $12,000 in cash in addition to half of any life insurance proceeds.[2] Moreover, during a taped and transcribed interview, Williams was asked whether he surrendered because he felt remorse, to which Williams responded as follows:

> Of course I feel bad about it because you know it was like, the woman never did anything to me, you know. It's just that I'm greedy for money, that's all it was, I was greedy for money and you know I just came out of prison, and I felt like man if I got twelve thousand dollars I'd be able to take care of my own self. And I wouldn't have to worry about (inaudible) sayin, oh he stay here with me and we feed and we do this and we do that for you, you ain't got nothin, if it wouldn't be

---

[2] As noted above, Bruce Gilmore was the beneficiary of the victim's life insurance policy.

7

> for us you wouldn't never have nothing. So you know, I look at it no matter how much I pray and ask for forgiveness and all this here, it will never bring her back because now she's restin in peace right now. But now, behind Bruce's and Michelle's ideas, (inaudible) and my stupidity, that caused a woman to loose her life, see what I mean.

Williams's argument is essentially that a rational juror could have found that the state failed to prove his intent beyond a reasonable doubt. In light of all the evidence, including Williams's confession to murdering Jeannette for the promise of remuneration (which was corroborated by the testimony of Jerrol Blueford and Jacqueline Hadnot) and the evidence that Jeannette's throat was slashed and she received a total of 13 stab wounds, we are convinced that no rational juror would have acquitted Williams of capital murder. *See Kinnamon v. Scott,* 33 F.3d 462, 464-65 (5th Cir. 1994) (explaining that counsel did not render ineffective assistance in not requesting jury instructions on lesser included offenses because the evidence did not permit a rational jury to acquit of capital murder and convict of felony murder). Thus, counsel did not provide deficient performance by not requesting the jury be instructed regarding the lesser included offenses of manslaughter and knowing or intentional murder.

### B. Failure to present an intoxication defense

Williams next argues that trial counsel rendered ineffective assistance by failing to present an intoxication defense during the guilt-innocence phase. The Texas Penal Code expressly provides that "[v]oluntary intoxication does not constitute a defense to the commission of crime." Section 8.04(a). Although Williams acknowledges this provision, he asserts that it does not "dispense with the culpable mental state required for capital murder." While it is true that the state had the burden of proving Williams's intent, we have expressly held that evidence of voluntary intoxication does not negate the element of specific intent required for capital murder. *Hernandez v. Johnson,* 213 F.3d

8

243, 250 (5th Cir. 2000) (citing *Raby v. State*, 970 S.W.2d 1, 6 (Tex.Crim.App.1998)). Although involuntary intoxication may absolve one of criminal culpability, *see Torres v. State*, 585 S.W.2d 746, 749 (Tex.Crim.App.1979), the evidence demonstrates that Williams voluntarily ingested alcohol and smoked marijuana. Accordingly, Williams has not shown that counsel's performance was deficient.

C.    Failure to Adequately Brief Issue of Prospective Juror DeLao

Williams next argues that counsel rendered ineffective assistance by failing to adequately brief the following issue on direct appeal: the trial court's refusal to excuse prospective juror Lydia Cruz DeLao for cause violated his rights under the Sixth and Fourteenth Amendments.[3] The Sixth Amendment right to a fair trial includes the right to an impartial jury. *Morgan v. Illinois*, 504 U.S. 719, 727, 112 S.Ct. 2222 (1992). In a capital sentencing context, a defendant has the right to challenge for a cause a juror whose views on capital punishment would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Wainwright v. Witt*, 469 U.S. 412, 424, 105 S.Ct. 844, 852 (1985).

The failure to grant a meritorious challenge for cause rises to the level of a constitutional violation and warrants relief only "if the defendant exhausts all peremptory challenges and an incompetent juror is forced upon him." *United States v. Webster,* 162 F.3d 308, 342 n.36 (5th Cir. 1999) (quoting *Ross v. Oklahoma*, 487 U.S. 81, 89, 108 S.Ct. 2273 (1988)). Absent such a showing, the defendant has not been denied his Sixth Amendment right to an impartial jury.

Williams argues that the trial court erred in denying his challenge for cause with respect to

---

[3]    If Williams demonstrates ineffective assistance of counsel on direct appeal, he would be entitled to a conditional grant of a writ of federal habeas corpus unless the state court would grant him an out-of-time appeal. *See Lombard v. Lynaugh*, 868 F.2d 1475, 1484 (5th Cir.1989).

prospective juror DeLao. He argues this erroneous refusal forced him to use a peremptory challenge to excuse DeLao. Subsequently, he exhausted his peremptory challenges and was forced to accept an "objectionable" juror, Carol Smith Bush. Williams informed the state trial court that juror Bush was "objectionable" but did *not* challenge Bush for cause. It appears that in Texas an "objectionable juror" is simply a juror that the defendant would have peremptorily challenged. *Wolfe v. State,* 178 S.W.2d 274, 281 (Tex.Crim.App. 1944).

Thus, as set forth above, because Williams has not shown that he was forced to accept an incompetent juror (as opposed to a merely "objectionable" juror), he has not been denied his Sixth Amendment right to an impartial jury. In any event, Williams is not arguing a violation of his Sixth Amendment right to an impartial jury. Instead, as indicated, Williams raises this argument in the context of ineffective assistance because, under Texas law, "[d]enial of a proper challenge for cause is error because the makeup of the jury affects its decision." *Johnson v. State,* 43 S.W.3d 1, 5 (Tex.Crim.App. 2001). Thus, Williams now raises this claim as one of ineffective assistance on direct appeal for failing to properly brief this particular argument.

It is undisputed that, pursuant to Texas law, Williams's trial counsel properly preserved error on his challenge for cause to prospective juror DeLao. As set forth by the state habeas court:

> Trial counsel for [Williams] properly preserved error on their challenge for cause to Lydia Cruz DeLao by (1) asserting a clear and specific challenge for cause to DeLao, (2) using a peremptory strike on DeLao after the challenge for cause was denied, (3) exhausting all peremptory challenges and requesting another strike, and (4) establishing that a juror who was "objectionable" to the defense sat on the jury. *See Green v. State,* 934 S.W.2d 92, 105 (Tex.Crim.App. 1996).

Williams contends that appellate counsel rendered ineffective assistance by failing to

10

adequately brief the trial court's refusal to excuse prospective juror DeLao pursuant to Texas law.

On direct appeal, Williams contended that the trial court "reversibly erred in denying [his] challenges for cause and refusing to grant additional challenges." More specifically, he argued that the "refusal of the trial court to grant a peremptory challenge to . . . remove [DeLao and three other prospective jurors] from jury duty herein constitutes reversible error. . . ." In its opinion on Williams's direct appeal, the Court of Criminal Appeals opined that:

> the record reflects [Williams] **did** use peremptory strikes against these four veniremembers, none of whom sat on the jury. And, [Williams] makes no claim in his brief that an objectionable juror or one who was subject to a challenge for cause sat on his jury as a result of the trial court denying his challenges for cause. Therefore, [Williams's] brief presents no issue for this Court to decide.

(emphasis in opinion).

To properly raise this issue in Williams's direct appeal brief, appellate counsel should have (at least) stated that: (1) a proper challenge for cause was made with respect to DeLao; (2) a peremptory strike was used on DeLao after the challenge was denied; (3) all peremptory strikes were exhausted and another strike was requested and denied; and (4) established that an "objectionable" juror (Bush) sat on the jury. This appellate counsel failed to do. We agree that counsel's briefing of this particular issue constituted deficient performance. Thus, the next question is whether Williams can show prejudice, *i.e.,* a reasonable probability that the outcome of his direct appeal would have been different if the issue had been properly briefed. *Briseno v. Cockrell,* 274 F.3d 204, 210 (5th Cir. 2001).[4]

---

[4] Williams argues that there is a line of cases, including *Goodwin v. Johnson,* 132 F.3d 162 (5th Cir. 1998), that conflicts with other circuits and is in error. In *Goodwin,* this Court held that the determination of *Strickland* prejudice "hinges upon the fairness of the trial and the reliability of the judgment of conviction resulting therefrom." *Briseno,* 274 F.3d at 207 (quoting

In other words, *if* the trial court erred in denying the challenge for cause with respect to DeLao, it appears that Williams would have been entitled to relief on direct appeal had appellate counsel adequately briefed the issue under Texas law. *See Johnson*, 43 S.W.2d at 4 (holding that harm was shown for the erroneous denial of the appellant's challenges for cause when two objectionable jurors sat on the jury). Thus, we must determine whether the trial court erred in denying the challenge to prospective juror DeLao. During his state habeas proceedings, Williams argued that the trial court had erred in denying his challenge for cause with respect to DeLao. The state habeas court found that the trial court "properly denied [Williams's] challenge for cause to Lydia Cruz DeLao because her views on capital punishment were not such that they would 'prevent or substantially impair the performance of [her] duties as a juror in accordance with [her] instructions and [her] oath.'" (quoting *Witt,* 469 U.S. at 420, 105 S.Ct. 844 (1985)). A state trial court's refusal of a petitioner's challenge for cause is a factual finding entitled to a presumption of correctness. *Jones v. Butler,* 864 F.2d 348, 362 (5th Cir. 1988). As previously indicated, a petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. Section 2254(e)(1). Additionally, the Supreme Court has made clear that "deference must be paid to the trial judge who sees and hears the juror." *Witt,* 469 U.S. at 426, 105 S.Ct. at 853.

Williams attempts to rebut this finding by pointing to DeLao's statement during voir dire

_____

*Goodwin,* 132 F.3d at 174). We further stated that "'[t]o the extent that the appellate process is merely a vehicle for correcting errors at trial, the fairness and reliability of an appeal are necessarily functions of the fairness and reliability of the trial.'" *Id.* Subsequently, however, this Court found that an intervening decision by the Supreme Court in *Smith v. Robbins,* 528 U.S. 259, 120 S.Ct. 746 (2000), "appears to have rejected *Goodwin's* holding." *Briseno,* 274 F.3d at 207. Accordingly, we do not apply the standard set forth in *Goodwin.* Instead, as indicated previously, we apply the familiar *Strickland* standard that was re-affirmed in *Williams,* 120 S.Ct. at 1511.

12

questioning that a defendant who commits murder should be executed. He also argues that in responding to questions during voir dire DeLao admitted that because of her beliefs she would probably vote "yes" to the future dangerousness question and would not be "open-minded" with respect to the mitigation question. Williams further argues that the trial court's attempt to rehabilitate DeLao was only with respect to the concept of burden of proof and not whether she could set aside her views against mitigating circumstances.

During voir dire, DeLao explained that her personal philosophy was that if a person commits a murder, that person should be executed. However, after the prosecutor informed her that her personal belief was not the law of Texas, DeLao stated that she could take the oath to be a juror and render a "true" verdict based on the law and the evidence. She also stated that if a defendant was found guilty of murder for remuneration, she could "still give them a life sentence if that's what the evidence calls for." DeLao also agreed that if the State did not prove beyond a reasonable doubt that the defendant was a continuing threat, she would answer the question "no."

Additionally, with respect to punishment phase, the prosecutor asked DeLao whether she was "open at that stage to looking at all the evidence, to recycle it, examine it again to determine whether or not there's a reason to give this person life as opposed to death?" And she responded, "Yes, sir." More specifically, the prosecutor inquired whether (although she believed generally that a person guilty of capital murder should receive the death penalty) she could "still [be] open to looking and seeing there's a reason to give life as opposed to death" and "examine the evidence" with respect to the mitigation question even though she had found a person guilty and answered the future dangerousness question affirmatively. DeLao answered that she was "still open to that." When questioned by the court, DeLao stated that she would not place the burden on the defense to bring

13

her evidence of mitigation.

As is not uncommon during questioning of a prospective juror, DeLao's responses varied depending upon the phrasing of the questions propounded by the prosecutor, defense counsel or the court. Although it is clear that DeLao had a strong personal preference for a capital murderer to receive a death sentence, she stated under oath that she would consider mitigating evidence and could follow the law. She responded that she could "give" a life sentence to a convicted murderer if that was what the evidence "call[ed] for." In view of the deference afforded the trial court's credibility determination and the presumption accorded the state court's factual finding under § 2254(e)(1), we are unpersuaded that Williams has rebutted the presumption with clear and convincing evidence. Accordingly, because the trial court did not erroneously refuse to excuse prospective juror DeLao, the outcome of Williams's direct appeal would not have been different. Williams is not entitled to a COA with respect to this claim.

E.      Failure to Raise Ineffective Assistance of Trial Counsel on Appeal

Finally, Williams contends that appellate counsel rendered ineffective assistance by failing to raise the issue of trial counsel's ineffective assistance. We note that the Court of Criminal Appeals, not unlike this Court,[5] has recognized that raising ineffective assistance on direct appeal "is often an inappropriate forum" in that the record may not be fully developed as to a particular claim. *Thompson v. State,* 9 S.W.3d 808, 814 n.5 (Tex.Crim.App. 1999).

Williams asserts that appellate counsel should have argued that trial counsel rendered ineffective assistance by failing to request jury instructions on the lesser included offenses of

---

[5]   This Court has "undertaken to resolve claims of inadequate representation on direct appeal only in rare cases where the record allowed us to evaluate fairly the merits of the claim." *United States v. Higdon,* 832 F.2d 312, 313 (5th Cir. 1987).

manslaughter and intentional or knowing murder. As discussed above, however, we have determined that counsel did not render deficient performance by failing to request these instructions and thus Williams is precluded from showing that appellate counsel rendered ineffective assistance by failing to make such an argument on direct appeal.

Williams also argues that appellate counsel should have argued that trial counsel was ineffective for failing to present an intoxication defense at trial. Likewise, as discussed above, because we have determined that trial counsel's performance was not deficient with respect to this claim, Williams is precluded from showing that appellate counsel rendered ineffective assistance by failing to make such an argument on direct appeal. Accordingly, Williams is not entitled to a COA with respect to these claims of ineffective assistance on direct appeal.

For the above reasons, we conclude that Williams has not made a substantial showing of the denial of a constitutional right and DENY his request for a COA.

DENIED.