# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 31, 2022

Lyle W. Cayce
Clerk

No. 21-50152

United States of America,

*Plaintiff—Appellee*,

*versus*

Jesus Cortez,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:19-CV-1160

Before Southwick, Graves, and Costa, *Circuit Judges*.

Per Curiam:*

A member of this panel previously denied Jesus Cortez a certificate of appealability and denied appointment of counsel. Cortez now moves for reconsideration. Both motions are again DENIED.

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-50152

## FACTUAL AND PROCEDURAL BACKGROUND

On November 2, 2012, the Drug Enforcement Administration ("DEA") received a confidential tip that a shipment of methamphetamine was going to be delivered to a Marriott Hotel in San Antonio, Texas. According to the informant, Joseph Ybarra would purchase the narcotics from an unknown individual in a vehicle with Arizona license plates, later identified as Eleazar Huerta. The DEA set up surveillance in the parking lots of two downtown Marriott Hotels.

While conducting their surveillance, officers saw a Ford Expedition and a Grand Marquis – vehicles that generally matched the informant's tip – drive into the parking lot of one of the Marriott hotels. Each driver went into the hotel, then returned to the parking lot. Soon thereafter, both men got into the Ford Expedition. Officers then saw a BMW pull into the parking lot, driven by defendant Jesus Cortez. Cortez got out, appeared to speak to Huerta, then got back into his BMW and seemingly followed the Ford Expedition out of the parking lot.

At that point, the DEA officers stopped both vehicles. The officers removed Cortez and two other people from his BMW and, as one of the officers later testified, began to "clear the vehicle for officer safety." After yelling out "clear," one officer looked to the backseat of the car "to make sure nobody was lying on the floorboard" and saw a "firearm on the driver's side set between the seat and the door as you open it."

All the drivers and passengers were detained and informed of their *Miranda* rights. Cortez decided to talk with the police. According to the officers, Cortez stated there was methamphetamine and cocaine in the vehicle and they were going to his father's house to drop off the vehicle. When asked why the drug dogs did not alert on the vehicle, Cortez said it might have been because of the way the drugs were packaged.

2

As a result of Cortez's statements, the DEA searched the Ford Expedition. They found sixteen bundles of methamphetamine hidden inside, weighing over five kilograms in total. Each kilogram had an estimated street value of $17,000 to $18,000.

Later that same month, a grand jury for the United States District Court, Western District of Texas. indicted Cortez for one count of conspiracy to possess with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841 and 846, and one count of aiding and abetting possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2. Three and a half years later, a grand jury indicted Cortez for one count of using or carrying a firearm "during and in relation to" a drug trafficking crime or possessing a firearm "in furtherance of" a drug trafficking crime, violating 18 U.S.C. § 924(c).

After a two-day trial in January 2017, Cortez was convicted on all three counts. The district court sentenced Cortez to a term of imprisonment of 210 months and 5 years of supervised release. This court affirmed Cortez's conviction, holding there was sufficient evidence to support the conviction and that the district court's decision not to follow the Pattern Jury Instructions was not per se error or a grave miscarriage of justice. *United States v. Cortez*, No. 17-50504, 2018 WL 3322863 (5th Cir. 2018).

Cortez then filed a Section 2255 motion to vacate his sentence, raising seven separate ineffective assistance of counsel claims. The Government filed a response in opposition to the motion, attaching affidavits from Cortez's trial counsel. The district court dismissed Cortez's Section 2255 motion and denied him a certificate of appealability ("COA") as to any claim. Cortez subsequently moved for a COA from this court and filed a motion for appointment of counsel. In January 2022, a single member of this panel denied the motions. The full panel now reconsiders the denial.

DISCUSSION

An appeal of a final order in a Section 2255 proceeding is governed by 28 U.S.C. § 2253(c). A petitioner must obtain a COA from "a circuit justice or judge" before appealing the denial of their petition. § 2253(c). Obtaining a COA requires that a petitioner make "a substantial showing of the denial of a constitutional right." § 2253(c)(2). Where the district court has denied the petitioner's claims on the merits, the petitioner must establish that reasonable jurists would find the denial debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). At the COA stage, we must "limit [our] examination to a threshold inquiry into the underlying merits of [the] claims." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)).

Cortez's Section 2255 motion raised eight claims in support of relief. We will consider each.

I. *Ineffective assistance of trial counsel*

An ineffective assistance of trial counsel ("IATC") claim presents a court with two issues for resolution. A moving party "must show: (1) 'that counsel's representation fell below an objective standard of reasonableness,' and (2) that the deficiency was 'prejudicial to the defense.'" *Anaya v. Lumpkin*, 976 F.3d 545, 550–51 (5th Cir. 2020) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984)). In evaluating counsel's performance for objective reasonableness, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. To show prejudice, "there [must be] a reasonable probability that, but for counsel's . . . errors, the result of the proceeding would have been different." *Id.* at 694.

First, Cortez contends that his trial counsel failed to conduct a reasonable investigation by failing to interview six potential witnesses and

obtain copies of his bank and phone records. Trial counsel is required to "make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 691. When assessing whether pretrial investigation was reasonable, we consider "the 'number of issues in the case, the relative complexity of those issues, the strength of the government's case[,] and the overall strategy of trial counsel.'" *Nealy v. Cabana*, 764 F.2d 1173, 1177 (5th Cir. 1985) (citation omitted). At a minimum, counsel must "interview potential witnesses and make an independent investigation of the facts and circumstances of the case." *Id.*; *see also* American Bar Association Standards for Criminal Justice § 4-4.1 (4th ed. 2017).

The district court dismissed this claim, relying on an affidavit provided by trial counsel stating that Cortez had not asked counsel to interview the potential witnesses or obtain phone or bank records. Though perhaps not requested, Cortez's trial counsel apparently did not interview any potential witnesses or conduct an independent investigation. They only attempted to interview Cortez's father and then did not interview anyone else. Instead, trial counsel believed, "in [their] professional judgment and experience, that [their] defensive theory was best supported by Mr. Cortez's own testimony, and our cross-examination of the Government's witnesses." Under these facts, reasonable jurists could debate the district court's conclusion that counsel's efforts were objectively reasonable. *See Strickland*, 466 U.S. at 691.

The district court also concluded that Cortez failed to show how additional efforts would have altered the outcome of the trial given the weight of the evidence against Cortez, including his oral confession. In support of his motion, Cortez provided only a single admissible affidavit from his brother – one of the named, uncalled witnesses – stating he was available and would have testified. *See Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir.

2009) (noting that, for uncalled-witness claims, *Strickland* requires showing that the testimony would have been not only favorable "but also that the witness would have testified at trial." (quoting *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985) (citations omitted))). Likewise, though Cortez alleges that his bank and phone records could have been used to impeach the Government's witnesses, he has not supported his assertions with any evidence that would allow him to prevail on his claim. *See Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983). Thus, Cortez has failed to support his claims of prejudice with evidence to raise a debatable issue that further investigations would have changed the outcome of his trial.

Second, Cortez contends that his trial counsel was ineffective by failing to apprise him of the status of their investigation, which would have allowed him to plead guilty. As the district court found, though, defense counsel informed Cortez of the government's case against him and of the potential consequences of going to trial. In fact, after the original indictment was superseded, the district court held two "*Lafler* hearings" to ensure that Cortez understood the charges against him and risks of rejecting the plea offer. *See Lafler v. Cooper*, 566 U.S. 156 (2012). When the court asked Cortez whether he was "satisfied" that he was adequately informed to make an independent decision, Cortez always responded that he was. As such, Cortez has failed to make a substantial showing that his counsel's performance was objectively unreasonable or that he would have taken the guilty plea but for any alleged defective performance. *See id.* at 174.

Third, Cortez contends that his trial attorneys were poorly prepared for trial because they did not have enough time to review the Government's discovery, research the law applicable to the case, investigate witnesses, and consult with Cortez's doctors or medical experts on his post-traumatic stress disorder ("PTSD") diagnosis. The district court dismissed this claim,

concluding that Cortez's arguments were largely unsubstantiated and that his counsel had vigorously represented Cortez at trial.

Cortez raises a debatable issue regarding counsel's deficient performance in failing to consult a medical expert regarding Cortez's apparent diagnosis of PTSD and failure to present evidence of his PTSD at trial. The defense knew of Cortez's claimed PTSD, as counsel relied on it at trial extensively. Even so, the defense did not submit documents or expert testimony in support of the supposed diagnosis at trial. To substantiate this claim, Cortez attached medical notes to his Section 2255 motion showing that a doctor listed PTSD as one of Cortez's ailments on December 1, 2016. Importantly, Cortez's trial counsel did not explain the failure to present this evidence or consult with Cortez's doctors regarding Cortez's PTSD diagnosis, nor did they suggest it was based on any strategic decision.

Nonetheless, Cortez has not made a substantial showing that the failure to present this evidence was prejudicial. He has not explained how evidence of a PTSD diagnosis would have altered the outcome of the trial given the weight of the evidence against him. *See Gray v. Lucas*, 677 F.2d 1086, 1093 (5th Cir. 1982). He argues that had his counsel been better prepared, they would have "been in a better position to impeach the government's witnesses" and "strengthen[ed] Cortez's defense." These conclusory allegations cannot satisfy Cortez's burden of showing prejudice. *See United States v. Holmes*, 406 F.3d 337, 361 (5th Cir. 2005).

Fourth, Cortez claims that his counsel's failure to investigate and present evidence of his PTSD was ineffective at the sentencing phase. The district court concluded that Cortez failed to show that his trial counsel was ineffective at sentencing and that but for the failure to investigate his PTSD he would have received a lesser sentence, noting that his trial counsel did raise the issue of Cortez's PTSD at sentencing. Indeed, Cortez received a

sentence well below the sentencing guidelines. Cortez has failed to explain how presenting more evidence of his psychological diagnoses would have affected the outcome of sentencing. *See Strickland*, 466 U.S. at 694.

Fifth, Cortez claims that his trial counsel was ineffective for failing to pursue a "substantial assistance" departure at sentencing. The district court dismissed this claim because in Cortez's trial testimony he denied the facts he had confessed to investigators regarding his co-defendants and denied responsibility for his actions. Also, the prosecutor has discretion whether to file a motion for a departure from the Guidelines based on a defendant's substantial assistance. *See Wade v. United States*, 504 U.S. 181, 185–86 (1992). District courts have the authority to review the decision not to file such a motion and grant relief if they find refusal was based on an unconstitutional motive. *Id.* Cortez does not allege any such motive here.

Sixth, Cortez contends that his counsel was ineffective by not moving to suppress the firearm found in his car. The district court dismissed this claim because the gun was found in plain view during a protective sweep of Cortez's vehicle. Defense counsel filed multiple motions to exclude evidence, successfully excluding body armor that was found in Cortez's trunk. *See Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). Cortez has not made a substantial showing that his counsel was deficient on this issue.

II.    *Ineffective assistance of appellate counsel*

Claims of ineffective assistance of appellate counsel are also analyzed using *Strickland*'s two-step test. *Briseno v. Cockiell*, 274 F.3d 204, 207 (5th Cir. 2001). To prove prejudice with respect to a claim that appellate counsel was ineffective, a petitioner must show a reasonable probability that he would have prevailed on appeal but for his counsel's deficient representation. *Id.*

First, Cortez contends his appellate counsel was deficient by failing to raise issues of vindictive prosecution and prosecutorial misconduct related to

"false statements" that were made outside the presence of the jury. His contention is unavailing. As the district court noted, no presumption of vindictiveness arises from a prosecutor's filing a superseding indictment after a defendant refuses to accept a guilty plea. *See United States v. Saltzman*, 537 F.3d 353, 360–62 (5th Cir. 2008). Also, Cortez has failed to explain how the complained-of "false statements" could have prejudiced him or how his appellate counsel would have been able to show plain error. Appellate counsel are not required to present patently frivolous – or even all non-frivolous issues – on appeal. *Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir. 1989).

Second, Cortez contends his appellate counsel was ineffective when they failed to challenge the constitutionality of 18 U.S.C. § 924(c)(2) after the Supreme Court's decision in *Johnson v. United States*, 576 U.S. 591 (2015). Specifically, Cortez complains that his appellate counsel did not argue that Section 924(c)(2) is unconstitutionally vague because it fails to "provide a fair notice of the prohibited drugs" that constitute "drug trafficking." The district court dismissed this argument because *Johnson* and subsequent cases — *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018) and *United States v. Davis*, 139 S. Ct. 2319 (2019) — applied to provisions of the United States Code with residual clauses. Section 924(c)(2) contains no residual clause, making *Johnson* inapplicable.

Cortez's motions for a COA and for appointment of counsel are DENIED.