# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 22, 2010

No. 08-20423

Charles R. Fulbruge III
Clerk

LEROY GREGORY, JR.,

Petitioner - Appellant

v.

RICK THALER, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent - Appellee

---

Appeal from the United States District Court
for the Southern District of Texas

---

Before KING, JOLLY, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Leroy Gregory, Jr., proceeding *pro se*, appeals denial of federal habeas relief from his state court conviction for possession of methamphetamine and possession of pseudoephedrine with the intent to manufacture methamphetamine. After exhausting state court proceedings, Gregory filed a habeas petition in federal court pursuant to 28 U.S.C. § 2254. The district court denied his petition and his request for a certificate of appealability (COA). We

No. 08-20423

granted in part his request for a COA regarding his ineffective assistance of counsel claim.  We AFFIRM.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Background

In 2003, Gregory and three friends, Clyde Dorsey, Jr., Cody Ray Hamilton, and Robby Dale Han, were gathered at Dorsey's home.  Montgomery County deputies proceeded to Dorsey's residence to serve a felony warrant on Hamilton. Dorsey gave the deputies permission to enter.  Upon entering the residence, the officers noticed there was "no lighting in the house at all" and smelled an unfamiliar odor. They further observed Gregory lying on the couch to the left of the front door. Hamilton was found in a corner in the right-hand back room. After finding Hamilton, the officers brought everyone outside.

After accompanying Dorsey back into the house upon his request, the officers found, in plain view, evidence of marijuana use.  Officers also saw a clear bottle with a separated liquid in it which they recognized as a possible by-product of a methamphetamine lab, and noticed a chemical smell in the house.  The Special Investigative Unit (SIU) for the Drug Task Force was called to process the scene, primarily because of the odor that was later determined to be methamphetamine.

SIU detectives recognized that there was a clandestine methamphetamine laboratory at the residence, with everything needed to manufacture methamphetamine, including: (1) Ziploc bags, used in distributing the drugs, containing a powdery substance; (2) a plastic tote box containing gallon-size solvent cans, sports bottles that had substances in them, and a plastic hose stained from use; (3) Red Devil lye and sodium hydroxide on the stove; and (4) a sports bottle containing a blue-colored liquid consistent with a type of solvent; and (5) large quantities of empty pseudoephedrine boxes and blister packs, the precursor for manufacturing methamphetamine. Moreover, a latent print was

No. 08-20423

obtained from a quart-sized Coca-Cola bottle found on the floor of the back bedroom on the left side of the house. That print was matched to the ring finger on Gregory's right hand and the substance in the bottle tested positive for ephedrine.

The SIU detectives also recognized that the burn pile outside the house, with several empty blister packs of cold medication in various stages of incineration, was consistent with a clandestine methamphetamine lab (where perpetrators attempt to destroy evidence by burning it). Items removed from the site, such as coffee filters, solvents, and red phosphorous, are commonly used in manufacturing methamphetamine. The detectives also identified a crystal white powder as either processed pseudoephedrine or ephedrine, or finished methamphetamine. An analysis of most of the recovered samples yielded positive results for methamphetamine and pseudoephedrine

## B. Procedural Background

In 2003, Gregory, Dorsey, Hamilton, and Han were charged in an indictment with possession of methamphetamine and possession of pseudoephedrine with the intent to manufacture methamphetamine.[1]

After a jury trial in January 2004, Gregory was convicted on both counts. Subsequently, Gregory pleaded true to enhancement allegations in the indictment regarding his two prior felony convictions for possession of a controlled substance. As a result, the trial court sentenced him to life imprisonment on each count; the sentences were ordered to run concurrently. The conviction was affirmed on direct appeal in March 2005. *Gregory v. State*, 159 S.W.3d 254, 259-62 (Tex. App.—Beaumont, 2005). In August 2005, the Texas Court of Criminal Appeals (TCCA) refused Gregory's subsequent petition for discretionary review.

---

[1] Hamilton pleaded guilty to the possession of methamphetamine charge one week before Gregory's trial. Dorsey pleaded guilty approximately one month after the trial.

No. 08-20423

Gregory filed a state habeas application challenging his conviction, arguing, *inter alia*, that trial counsel was ineffective for failing to call Dorsey and Hamilton as witnesses because both would have testified that Gregory did not know about the drugs in the residence. In support of the application, Gregory submitted affidavits from Dorsey and Hamilton regarding the content of their favorable testimony and their willingness to testify if they had been called as witnesses. Upon the court's order, Gregory's trial counsel submitted a response affidavit stating that he did not call Dorsey or Hamilton because (1) they were accomplices whose testimony is considered inherently unreliable under Texas law, (2) neither Dorsey nor Hamilton came forward with statements favorable to Gregory either before the trial or within a month of the trial or sentencing; and (3) a review of the prosecution's files on the cases against Dorsey and Hamilton did not reveal any statements supporting the claims made in the affidavits. Without a hearing, the state trial court issued findings of fact and conclusions of law denying Gregory's application. The TCCA denied Gregory's application, without written order, based on the findings of the trial court.

Gregory then filed this § 2254 habeas petition in which he effectively raised the same claims that he asserted in his state application. Specifically, Gregory asserted that trial counsel was ineffective because he failed to investigate or call Dorsey or Hamilton as potential witnesses. The district court dismissed the petition and granted Respondent's motion for summary judgment, finding, in relevant part, that Gregory did not "present probative summary judgment evidence that counsel's professional judgment regarding the potential use of the accomplices as witnesses was unreasonable under the circumstances." The district court *sua sponte* denied Gregory a COA.

In March 2009, we granted Gregory's request for a COA as to one issue: whether his trial counsel was ineffective for not interviewing Dorsey and Hamilton and for not calling them as witnesses at trial. We denied his request

4

for a COA on the remaining issues.  Gregory timely filed his appeal, asserting the ineffective assistance claim.

## II.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), we cannot grant Gregory's habeas application with respect to any claim that was adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

Claims of ineffective assistance of counsel involve mixed questions of law and fact and are governed by § 2254(d)(1).  *See Briseno v. Cockrell*, 274 F.3d 204, 206-08 (5th Cir. 2001).  The state court's decision is "contrary to" the Supreme Court's clearly established precedent if the state court either "applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a [different result]."  *Penry v. Johnson*, 532 U.S. 782, 792 (2001) (internal quotations and citations omitted).  The state court's decision is "an unreasonable application" of the Supreme Court's clearly established precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."  *Id.* (internal quotations and citations omitted).  The state court's factual determinations "shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing

evidence." *Wesbrook v. Thaler,* 585 F.3d 245, 251 (5th Cir. 2009) (citing § 2254(e)(1)).

In reviewing the denial of habeas relief, the court examines factual findings for clear error, and it reviews, de novo, questions of law and mixed questions of law and fact. *Carty v. Thaler*, 583 F.3d 244, 252-53 (5th Cir. 2009).

## III.  DISCUSSION

"In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. CONST. amend VI.  Under the well-established *Strickland* test, Gregory must show (1) that his counsel's performance was deficient, and (2) that the deficient performance prejudiced his defense.  *Strickland v. Washington*, 466 U.S. 668, 689-94 (1984).

To establish deficient performance, Gregory must demonstrate that "counsel's representation 'fell below an objective standard of reasonableness.'" *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688). Counsel "is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.    "[T]o establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Wiggins*, 539 U.S. at 534 (citation omitted).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.

An applicant "who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989).  To prevail on an ineffective assistance claim based upon uncalled witnesses, an applicant must name the witness, demonstrate that the witness would have testified, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable.  *See Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985).

Claims of uncalled witnesses are disfavored, especially if the claim is unsupported by evidence indicating the witnesses's willingness to testify and the substance of the proposed testimony. *See Harrison v. Quarterman*, 496 F.3d 419, 428 (5th Cir. 2007). The decision whether to present a witness is considered to be essentially strategic, and "speculations as to what [uncalled] witnesses would have testified is too uncertain." *Alexander*, 775 F.2d at 602.

In this case, Gregory's federal habeas petition included a brief paragraph stating the following:

> Petitioner submits that his trial counsel failed to investigate or call Clyde Dorsey or Cody Hamilton as potential witnesses, providing ineffective assistance of counsel, as had he called Dorsy [sic], he would have testified that petitioner had simply slept over at his house where the drugs and other paraphernalia had been discovered and had no knowledge of same. Hamilton would have testified to the same facts.

However, Gregory's conclusory statements regarding the content of the uncalled witnesses testimony are insufficient to demonstrate ineffective assistance. *See Green*, 882 F.2d at 1003. In his *pro se* state habeas application, Gregory attached Dorsey and Hamilton's affidavits. In his *pro se* federal habeas petition, however, he failed to include the affidavits for consideration by the district court. We will not ordinarily enlarge the record on appeal to include material not before the district court. *See United States v. Flores*, 887 F.2d 543, 546 (5th Cir. 1989). As the district court noted, Gregory's failure to provide "competent summary judgment evidence"—i.e., exhibits or affidavits—is fatal to his claim.

Even assuming the affidavits were included with Gregory's federal habeas petition, Gregory cannot meet his burden under AEDPA. "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. Here, the state court

assessed the affidavit that trial counsel submitted in response to Gregory's claims.  In the affidavit, trial counsel stated that Dorsey and Hamilton were accomplices who, under Texas law, would have been deemed corrupt and whose testimony would have been inherently suspect, citing *Virts v. State*, 739 S.W.2d 25, 27 (Tex. Crim. App. 1987).  He also stated that neither Dorsey nor Hamilton had provided exculpatory statements or evidence prior to Gregory's trial.  Based on this affidavit, the state court made a factual finding that the affidavit was credible and that Gregory's trial counsel concluded that Dorsey and Hamilton's testimony would be harmful to Gregory's defense.  Under AEDPA, we presume the state court's factual findings are correct unless Gregory presents clear and convincing evidence to the contrary.  *See Westbrook*, 585 F.3d at 251.  As noted, Gregory has not presented any evidence to rebut the presumption.

In addition, the state court concluded that Gregory failed to prove by a preponderance of the evidence that: (1) he was denied his right to the effective assistance of counsel and (2) trial counsel's decision not to pursue the co-defendants as witnesses prejudiced the outcome of the trial.  Under AEDPA, we review with deference "the ultimate legal conclusion that the state court reached."  *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002).  Without "the distorting effects of hindsight," *Strickland*, 466 U.S. at 689, the state court found that trial counsel's strategic decision to omit Dorsey and Hamilton's potentially harmful testimony was not deficient.  Similarly, "consider[ing] the totality of the evidence before the jury," *Strickland*, 466 U.S. at 695, the state court concluded that the outcome of Gregory's trial was not undermined by trial counsel's decision.  Our review of the record does not compel a different result.[2]

---

[2] Indeed, our review of the record amply supports this result.  To prevail on his claim, Gregory must demonstrate that Dorsey and Hamilton would have been available to testify. *See Alexander*, 775 F.2d at 602.  In order to help Gregory, however, Dorsey and Hamilton would have had to testify about their own involvement in the methamphetamine lab and would thereby have inculpated themselves in their own trials. It is therefore unlikely that

No. 08-20423

Accordingly, viewed through AEDPA's deferential lens, the state court's rulings regarding trial counsel's decision not to call Dorsey and Hamilton were not contrary to or an unreasonable application of *Strickland*. *See* § 2254(d)(1).

## IV. CONCLUSION

Based on the foregoing, Gregory has not shown that he is entitled to habeas relief. Accordingly, we AFFIRM the district court.

---

either witness would have been available to testify on Gregory's behalf.