# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
March 4, 2011

Lyle W. Cayce
Clerk

No. 09-30732

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

NOAH MOORE, JR.,

Defendant - Appellant

Appeals from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:03-CR-00282

Before BARKSDALE, CLEMENT, and PRADO, Circuit Judges.

PER CURIAM:[*]

Proceeding *pro se* and *in forma pauperis*, Noah Moore, Jr., federal prisoner # 24804-013, challenges the denial of 28 U.S.C. § 2255 relief, regarding his conviction for conspiracy to distribute, and to possess with intent to distribute, more than 100 grams of heroin. (He was sentenced to 200 months' imprisonment.) In his request for a certificate of appealability (COA), both in district court and here, Moore claimed his appointed trial counsel (a federal public defender) rendered ineffective assistance by, *inter alia*, underestimating

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-30732

his sentencing exposure and failing to advise him to plead guilty. Our court granted Moore a COA on: whether counsel performed deficiently by failing to advise him as to his actual sentencing exposure; and, if so, whether Moore established both that it is reasonably probable he would have pleaded guilty had he known of the true sentence he faced, and that a guilty plea would have reduced his sentence. AFFIRMED.

## I.

In September 2003, while serving a 295-month sentence for a 1993 federal drug-trafficking conviction, Moore was indicted on one count of conspiracy to distribute, and to possess with intent to distribute, more than 100 grams of heroin. As detailed in our court's opinion affirming Moore's conviction on that charge, *United States v. Moore*, 452 F.3d 382, 384 (5th Cir. 2006), the events leading to his indictment were as follows.

Shortly after Moore's incarceration in 1993 for cocaine distribution, Hillary Williams, a childhood friend and New Orleans resident, began visiting him in prison. Moore introduced Williams to Tunde Ademuiiwa, a Nigerian inmate, who was allegedly assisting Moore with his appeal for his 1993 conviction. Moore told Williams about that assistance and told Ademuiiwa that Williams would help pay for it.

In New Orleans, Williams began collecting money from Moore's friends, purportedly to pay for that assistance. After Ademuiiwa had been released from prison and deported to Nigeria, he began calling Williams, asking for $50,000 allegedly owed Ademuiiwa by Moore. In August 2002, Moore informed Williams: Ademuiiwa was a heroin dealer; Moore's family had stolen the $50,000 from Ademuiiwa; Moore owed Ademuiiwa for past heroin sales; and Moore was counting on Williams to help him pay back the $50,000. Moore also informed Williams that he had recently ordered more heroin from Ademuiiwa, which would be shipped to Williams hidden inside books.

Between December 2002 and January 2003, Ademuiiwa sent Williams three books concealing heroin; Williams, in turn, wired Ademuiiwa $10,000. Williams planned to buy more heroin from Ademuiiwa and sell it through a friend to pay the remaining debt.  That friend, however, was a Drug Enforcement Administration confidential informant (CI).

After receiving information from the CI, the DEA approached Williams about his involvement in the conspiracy.  Williams cooperated by explaining the heroin-importation scheme; putting undercover DEA Agents in contact with Ademuiiwa; and testifying at Moore's trial.

In October 2003, the month after his indictment for the conspiracy, Moore requested court-appointed counsel; a federal public defender was appointed to represent him.  (Moore now claims ineffective assistance by that attorney.) Moore was advised of the statutory maximum penalty for the charged crime at his arraignment that October, at which he pleaded not guilty.

Moore filed pre-trial motions to:  suppress the Bureau of Prisons' (BOP) recordings of his telephone conversations; and dismiss the indictment, on the basis that the Government had destroyed recordings of exculpatory conversations.  *See id*.  The district court denied both motions, ruling:  Moore had consented to being recorded; and the allegedly exculpatory information was not material and had not been destroyed in bad faith.  *Id*.  Of 282 tapes containing recorded telephone conversations between Moore, in prison, and Ademuiiwa, in Nigeria, only 16 were retained by the Government before trial; the remainder were recycled pursuant to BOP protocol.  *Id*. at 387-89.  There were also 78 tapes of recorded telephone conversations between Moore and Williams, all of which were recycled before trial.  *Id*. at 385 n.1, 389-90.

In addition to Williams' testimony at Moore's trial in May 2004, the Government offered the preserved BOP recordings of telephone conversations between Moore and Ademuiiwa.  In the recorded conversations, Moore and Ademuiiwa spoke in coded language.  Moore testified the conversations were not

about heroin trafficking, but were, instead, about raising funds for his appeal and various business ventures he and Ademuiiwa were planning, such as a clothing line, tee-shirt sales, and diamond importation.

In May 2004, Moore was convicted by a jury. That June, Moore's appointed trial counsel was granted leave to withdraw, because Moore had advised he intended to claim ineffective assistance of counsel (IAC) in a new-trial motion.

At sentencing that October, based on trial testimony and other evidence, Moore, represented by new counsel, was held accountable for between 400 and 700 grams of heroin and assessed: a base offense level of 28; a four-level leadership-role enhancement; and a two-level obstruction-of-justice enhancement for perjury (because of his trial testimony that the coded language in the recorded telephone conversations concerned legitimate business ventures, not drug trafficking). Moore's Guideline sentencing range was 188 to 235 months. He was sentenced to 200 months' imprisonment, to run consecutive to his 1993 sentence.

His conviction was affirmed on direct appeal, but our court remanded for resentencing in the light of *United States v. Booker*, 543 U.S. 220 (2005) (holding Sentencing Guidelines advisory only). *Moore*, 452 F.3d at 392. On remand, the district court again imposed a 200-month, within-Guidelines sentence. That sentence was affirmed by our court. *United States v. Moore*, 238 F. App'x 13, 14 (5th Cir.), *cert denied*, 552 U.S. 1064 (2007).

Moore's appointed trial counsel, who had been permitted to withdraw in 2004 before sentencing, died in October 2007. Later that month, proceeding *pro se*, Moore filed the underlying § 2255 motion, claiming his trial counsel had rendered ineffective assistance by: (1) underestimating Moore's sentencing exposure and failing to advise him to plead guilty; (2) failing to compel the Government to preserve and produce the above-described BOP telephone

4

recordings and telephone call logs of recorded conversations; and (3) failing to object to claimed hearsay testimony by Williams.

In June 2009, the district court (same judge who presided over trial, sentencing, and resentencing) denied § 2255 relief without holding an evidentiary hearing. *United States v. Moore*, No. 03-0282, 2009 WL 1649497, at *3, 5-6 (E.D. La. 9 June 2009). For Moore's IAC claim that counsel underestimated his sentencing exposure and failed to advise him to plead guilty, the court ruled: Moore would not have pleaded guilty even "had he known of his actual sentencing exposure in 2004"; and, therefore, Moore's IAC claim failed, "even assuming deficient performance by counsel and that a guilty plea would have resulted in a lesser sentence". *Id.* at *6. Along that line, the court stated:

> It is impossible to reconcile Moore's denial of guilt at trial and his continuing denial of guilt in his [§ 2255] motion with his conclusory assertion that he would have plead guilty to the indictment had he been made aware of his sentencing exposure. In order for the Court to have accepted a guilty plea, Moore would have had to sign and admit to a factual basis acknowledging his involvement in the criminal conspiracy, an involvement he has steadfastly refused to acknowledge at every opportunity to do so. Therefore, *in light of Moore's trial testimony* and his continuing profession of innocence, the Court declines to find that Moore would have plead guilty had he known of his actual sentencing exposure in 2004.

*Id.* (emphasis added).

Later in 2009 in district court, Moore filed, *inter alia*: a request for a COA on several IAC claims; and a notice of appeal from the denial of his § 2255 motion. The COA request was denied.

In April 2010, our court granted the earlier-described COA for: whether Moore's trial counsel had performed deficiently by failing to advise him on his actual sentencing exposure; and, if so, whether Moore had established both that

it is reasonably probable he would have pleaded guilty had he known of the true sentence he faced, and that a guilty plea would have reduced his sentence.

## II.

Pursuant to that COA, Moore maintains he received IAC, based on his assertions that his trial counsel:  failed to consider additional, drug-related conduct that added to the drug quantity for which Moore was held responsible at sentencing; failed to consider possible obstruction-of-justice and leadership-role enhancements; and informed Moore the "maximum potential penalty" he faced, if he lost at trial, was between 78 and 97 months' imprisonment.  Moore claims:  he would have "definitely pleaded guilty" had he known of his actual sentencing exposure; and his sentence would have been reduced had he pleaded guilty.

In the alternative, Moore requests that this matter be remanded to district court for an evidentiary hearing on this IAC claim.  As discussed *infra*, whether an evidentiary hearing should have been held was not included in the COA granted by our court.

In reviewing this denial of § 2255 relief, the district court's findings of fact are reviewed for clear error; its conclusions of law, *de novo*.  *E.g.*, *Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010).  IAC claims are mixed questions of law and fact, reviewed *de novo*.  *Skinner v. Quarterman*, 576 F.3d 214, 216 (5th Cir. 2009).

## A.

To establish IAC, pursuant to the well-known, two-prong standard, Moore must demonstrate:  counsel's performance "fell below an objective standard of reasonableness"; and Moore was prejudiced as a result.  *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Among other things, the objective standard of reasonableness "requir[es] that counsel research relevant facts and law, or make an informed decision that certain avenues will not be fruitful".  *United States v. Herrera*, 412 F.3d 577, 580 (5th Cir. 2005) (internal citation and

6

quotation marks omitted). For prejudice, Moore must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"; *i.e.*, had he been properly advised, he would have pleaded guilty and a guilty plea would have resulted in a lesser sentence. *Strickland*, 466 U.S. at 694; *see Arnold v. Thaler*, 630 F.3d 367, 369-70 (5th Cir. 5 Jan. 2011). In that regard, "any amount of actual [imprisonment] has Sixth Amendment significance, which constitutes prejudice for purposes of the *Strickland* test". *United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004) (internal citations and quotation marks omitted).

In district court, in his initial brief in support of his § 2255 motion, Moore presented many allegations. Moore did *not*, however, submit an affidavit containing them. Instead, Moore's § 2255 motion included a declaration, pursuant to 28 U.S.C. § 1746. In the motion, he stated as his second ground for relief: "Counsel was ineffective in grossly underestimating petitioner's sentenc[ing] exposure and failing to advise a guilty plea in the case". In that part of the motion, in the "Supporting Facts" section, Moore stated: "See pg. 5 of Memorandum of Law". That brief does not contain a § 1746 declaration for that part of the brief (although, as discussed *infra*, it does for another part). We will assume, without deciding, that Moore's referenced allegations in his supporting brief were also under penalty of perjury, pursuant to the § 1746 declaration in his motion.

**1.**

As noted *supra*, the district court did not decide whether Moore's counsel's performance was deficient, but instead denied Moore's IAC claim for failure to show prejudice. *See Moore*, 2009 WL 1649497 at *6. Likewise, if we hold Moore failed to prove prejudice, we need not address counsel's performance; however, we address it here because it is part of the COA and Moore must satisfy both IAC prongs. For the reasons that follow, Moore fails to show deficient performance.

As stated *supra*, to establish such performance, Moore must show it "'fell below an objective standard of reasonableness'". *Rogers v. Quarterman*, 555 F.3d 483, 489 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 688). "This objective standard carries a strong presumption that counsel's conduct 'falls within the wide range of reasonable professional assistance,' considered as sound trial strategy." *Id.* (quoting *Strickland*, 466 U.S. at 689). "In reviewing counsel's performance, we make every effort to eliminate the distorting effects of hindsight and attempt to adopt the perspective of counsel at the time of the representation." *Id.* (citing *Strickland*, 466 U.S. at 689).

"Failing to properly advise the defendant of the maximum sentence that he could receive falls below the objective standard required by *Strickland*." *Herrera*, 412 F.3d at 580 (internal citation and quotation marks omitted). Obviously, a defendant cannot intelligently choose whether to accept a plea if he lacks a full understanding of the risks of going to trial. *Id.* Further, underestimating a defendant's sentencing exposure is a breach of counsel's duty to fully advise his client "on whether a particular plea to a charge appears desirable". *Grammas*, 376 F.3d at 436-37 (internal citations and quotation marks omitted). Therefore, to show his counsel performed deficiently, Moore must show counsel miscalculated his sentencing exposure and, as a result, Moore lacked a full understanding of the risks of going to trial.

**a.**

On the above-described page five of his brief in support of his § 2255 motion, referenced by that motion, Moore stated: counsel erroneously estimated the Government would be able to prove he was accountable for only 100 to 400 grams of heroin in the alleged conspiracy, and if found guilty at trial, he would face 78 months' imprisonment. In the following pages of that brief, Moore stated: counsel explained that imputing 400 grams into the Sentencing Guidelines resulted in a base offense level of 26 and, with criminal history category III, the sentencing range would be 78 to 97 months; counsel failed to

forecast the potential leadership-role and obstruction-of-justice enhancements; Moore pleaded not-guilty and proceeded to trial because "he figured that even if he were to blow trial, the sentencing estimate of 78 months was within something he felt he could handle"; and his decision to proceed to trial was based primarily on counsel's advice. These allegations alone are insufficient to show deficient performance.

More important than what Moore does present, is what he does *not* present. For example, Moore does not state, much less offer evidence: on why his counsel estimated Moore would be responsible for no more than 400 grams of heroin; that he fully informed counsel of his interactions with Williams and Ademuiiwa; that he informed counsel there was a possibility Moore could be held accountable for more than 400 grams of heroin; or that his counsel, before advising Moore on his sentence, had been provided the communications between the co-conspirators, discussing amounts of heroin to be shipped and distributed, on which the district court relied in sentencing Moore.

Further, at sentencing, Moore's new counsel (who replaced the attorney against whom Moore now claims IAC) maintained that Moore was responsible for less than 400 grams of heroin. There, new counsel referenced Williams' testimony and the trial transcript and asserted: "the numbers were always under 300 [grams] . . . . The [trial] transcript speaks for itself . . . . And we submit it does support our position that the 400 and 700 [grams are] excessive".

Along that line, at sentencing, the district judge noted: "The drug guideline applied is not merely by reference of conviction, but by including all the defendant's relevant conduct. . . . [T]his can include conduct outside the conviction". Moore does not assert that his trial counsel, before advising about a sentence, knew, or should have known, all the evidence that would arise at trial. Neither does Moore assert that he informed counsel about all his relevant conduct.

9

In his brief in this court, Moore contends: "Counsel's reason for informing his client [that the maximum sentence that could be imposed was 78 to 97 months] was because of [counsel's] belief that the [Government] lost the tapes [of the recorded prison telephone conversations] (that counsel labeled the "Smoking Gun") and that the percentage of beating the case was high". Moore did not, however, make those allegations in district court. As that court noted: "Had Moore been found to have been responsible for 100 or more grams of heroin, but less than 400 grams, his base offense level would have been 26, providing a sentencing range of 78 to 97 months." *Moore*, 2009 WL 1649497 at *5 n.20. That is the range Moore claims was calculated by trial counsel. Accordingly, Moore failed in district court to prove that, before advising on sentencing, his counsel knew, or should have known, of the amount of heroin for which Moore might be held responsible.

**b.**

Additionally, for the leadership-role enhancement, Moore does not assert he told counsel, or that counsel otherwise learned, before advising on sentencing, that Moore was involved in the conspiracy to the extent that he could possibly be assessed a leadership-role enhancement. Moore does not assert counsel knew, or should have known, that "there were five or more participants in the scheme", that Moore "recruited his mother as part of the scheme", that his co-conspirator Williams "had no criminal record whatsoever", that he "had various drug dealers on the street who were giving money to front for drugs", or that "he was the hub of this organization"–all of which were considered by the district court at sentencing. None of these facts were asserted by Moore in his § 2255 motion. Accordingly, Moore failed to prove his counsel was ineffective by not predicting the assessment of a leadership-role enhancement.

**c.**

As for his obstruction-of-justice enhancement, Moore offers no evidence on why his trial counsel should have assumed that Moore would perjure himself at trial. There, as discussed, Moore testified that the recorded conversations he had with Ademuiiwa did not concern importation of heroin; were not coded language for drug-trafficking; and were necessary to discuss legitimate business endeavors, such as developing a clothing line to be funded by a famous rap artist, selling tee-shirts, and diamond importation.

Moore presents no basis for this serious charge against his deceased trial counsel. Suffice it to say that Moore's perjury in district court can not be translated into evidentiary support for IAC.

**2.**

In the alternative, Moore fails to show prejudice. As discussed *supra*, to do so, Moore must demonstrate there was a reasonable probability that: he would have pleaded guilty had he known the penalty he faced; and a guilty plea would have reduced his sentence. *Grammas*, 376 F.3d at 439. As also noted *supra*, the district court concluded: Moore could not show prejudice because his trial testimony and protestations of innocence, both at trial and in this § 2255 proceeding, precluded its being reasonably probable he would have pleaded guilty had he known of his actual sentencing exposure. *See Moore*, 2009 WL 1649497 at *6.

On page seven of his brief in district court in support of his § 2255 motion, Moore stated: "had counsel come even a bit close to the correct sentence [Moore] was facing, and had advised a plea as an alternative means of resolving the matter, [Moore] would have considered the advice, and would have taken a plea to reduce the exposure"; and, had he pleaded guilty, he would have received a three-level reduction for acceptance of responsibility, avoided the perjury enhancement, and possibly avoided the leadership-role enhancement. Also, beginning at page seven, Moore stated: "Petitioner hereby states under penalty

of perjury pursuant to 28 U.S.C.[] § 1746 that had counsel properly advised him of his sentencing exposure, and the benefit of pleading guilty, Petitioner would have definitely pleaded guilty in this case".

As discussed *supra*, we assume, without deciding, that these statements at page seven of his brief in district court constitute evidence. Such evidence is insufficient, however, for the following reasons, to "affirmatively prove" that there is a "reasonable probability" Moore would have pleaded guilty had he known his actual sentencing exposure.

**a.**

Moore must "show a reasonable probability that, absent counsel's ineffectiveness, he would have changed his plea". *Arnold*, 630 F.3d at 370. For an IAC claim, defendant must "affirmatively prove prejudice". *Strickland*, 466 U.S. at 693.

Moore relies on *Griffin v. United States*, 330 F.3d 733 (6th Cir. 2003), and *Lalani v. United States*, 315 F. App'x 858 (11th Cir. 2009), to counter the district court's ruling that his continued claims of innocence were sufficient to establish he would not have pleaded guilty. In *Griffin*, the Sixth Circuit held defendant's repeated declarations of innocence did not prove he would not have accepted a guilty plea had he been properly advised on his sentencing exposure. 330 F.3d at 738 (citing *North Carolina v. Alford*, 400 U.S. 25, 33 (1970) (holding "reasons other than the fact that he is guilty may induce a defendant to so plead") (internal citations and quotation marks omitted)). *Griffin* provided: "It does not make sense to say that a defendant must admit guilt prior to accepting a deal on a guilty plea. . . . [A] defendant must be entitled to maintain his innocence throughout trial under the Fifth Amendment". 330 F.3d at 738. Similarly, in *Lalani*, the court cited *Griffin* and held that petitioners' "protestations of innocence after their trial do not prevent [them] from showing prejudice . . . ." 315 F. App'x at 861.

In *Lalani* and *Griffin*, however, the courts found sufficient evidence in the record warranted an evidentiary hearing to determine whether there was a "reasonable probability" that defendants would have accepted a guilty plea if properly advised. *See id.*; 330 F.3d at 739. Such evidence does *not* exist for Moore.

In *Lalani*, the court found defendant instructed trial counsel to pursue a plea agreement but counsel told him a plea agreement "was not necessary because he was going to win the case". 315 F. App'x at 859 (internal quotation marks omitted). In *Griffin*, the court found: defendant was unaware that his codefendants were going to testify against him in exchange for lesser sentences; counsel denied any plea offer being made to defendant, even though the Government conceded one was made; and the gap between the potential sentence if convicted and the plea offer was substantial. 330 F.3d at 735, 738-39.

There is insufficient evidence to find Moore would have pleaded guilty had he been informed of his maximum sentencing exposure. There is, however, evidence suggesting Moore would *not* have accepted a guilty plea. In a letter to counsel, he stated: "I plan on fighting from beginning to end". At sentencing, he maintained, for example, that his prosecution was out of spite "because [he] refused to cooperate with the United States Government".

In *Grammas*, our court held: "Whether it is reasonably probable that [defendant's] decision to plead guilty would have been different had he been properly counseled as to his potential punishment is a question of fact" that "should be left to the district court". 376 F.3d at 438. There, defendant asserted in his brief that he went to trial partly because counsel advised him he would be acquitted on one of the indicted counts. *Id.*

Here, the district court considered the trial and sentencing, at which it had presided, and the § 2255 record and found it was not "reasonably probable that [Moore] would have plead[ed] guilty had counsel informed him of the actual punishment he faced". *Moore*, 2009 WL 1649497 at *6. The court ruled: "It is

13

impossible to reconcile Moore's denial of guilt at trial and his continuing denial of guilt in his [§ 2255] motion with his conclusory assertion that he would have plead guilty to the indictment had he been made aware of his sentencing exposure". *Id.* The court reasoned that, "in light of Moore's *trial testimony* and his continuing profession of innocence, the [c]ourt declines to find that Moore would have plead guilty had he known of his actual sentencing exposure in 2004". *Id.* (emphasis added).

**b.**

For the above-stated reasons, the district court did not err in that ruling. Accordingly, we need not address the second element for showing prejudice: whether a guilty plea would have reduced Moore's sentence. *Strickland*, 466 U.S. at 693.

**B.**

Moore requests our court remand this matter for an evidentiary hearing, even though he did not request one in district court; he did not request a COA to challenge the district court's not holding one; and the COA our court granted does not include that issue. It is well settled that substantive claims that exceed the scope of issues on which a COA is granted will not be considered. *See United States v. Kimler*, 150 F.3d 429, 430-31 (5th Cir. 1998); *Lackey v. Johnson*, 116 F.3d 149, 151-52 (5th Cir. 1997).

On the other hand, if, in considering the IAC issue allowed by the COA, we had concluded that, instead of our ruling on the IAC claim, an evidentiary hearing was necessary, this matter could have been remanded for that purpose. For the above-discussed reasons, however, the district court did not err in denying § 2255 relief on the IAC claim covered by the COA. Therefore, it was not necessary for this court to consider whether to remand for an evidentiary hearing.

**III.**

For the foregoing reasons, the denial of § 2255 relief is AFFIRMED.