# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 30, 2021

Lyle W. Cayce
Clerk

No. 20-70008

Arturo Daniel Aranda,

*Petitioner—Appellant*,

*versus*

Bobby Lumpkin, Director, Texas Department of
Criminal Justice, Correctional Institutions Division,

*Respondent—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 6:89-CV-13

Before Haynes, Graves, and Engelhardt, *Circuit Judges*.

Per Curiam:[*]

Having failed to obtain federal habeas relief, Petitioner Arturo Aranda seeks a certificate of appealability and challenges the denial of evidentiary hearings on some of his claims. We issue a certificate of appealability as to some of his claims but deny it as to others.

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-70008

## I.

Early in the morning hours of July 31, 1976, Officers Pablo Albidrez and Candelario Viera of the Laredo Police Department stopped a suspicious vehicle. It would be Officer Albidrez's last traffic stop. Gunfire erupted and the officers returned fire, engaging in a shootout with two men fleeing the vehicle. Officer Albidrez was hit. Shot through the service badge on his chest, he died from his injury.

The fleeing occupants of the vehicle were brothers: Arturo and Juan Aranda. They had been transporting a large quantity of marijuana when stopped by the officers. Shortly after the shooting, they were apprehended and arrested about a block from the scene.

Arturo Aranda did not escape unscathed. Hit in the shoulder and hand, he was transported to a hospital, where a .38 caliber handgun was found hidden in his pants. Ballistic testing later showed that this weapon could have fired the bullet that killed Officer Albidrez, and no other recovered weapon could have. After interrogation, Aranda confessed to killing Officer Albidrez. He later challenged that confession.

Both brothers were charged for the murder of Officer Albidrez. Juan Aranda was tried first; he was found guilty and sentenced to life in prison. Arturo Aranda was tried next. His trial began in Webb County, though the judge later moved the trial to Victoria County over Aranda's objection. At the conclusion of the trial, a jury found Aranda guilty. In the punishment phase of the trial, the jury sentenced Aranda to death under the Texas death penalty scheme as it existed then.

Arturo Aranda appealed, and his conviction was affirmed. *Aranda v. State*, 736 S.W.2d 702 (Tex. Crim. App. 1987) (en banc). He filed a state post-conviction application, which was denied. He then turned his sights to federal court. On April 20, 1989, Aranda filed a federal habeas petition. The

No. 20-70008

State moved for summary judgment, and the district court granted the State's motion. Two weeks later, on January 15, 1992, Aranda moved to alter and amend the judgment. The State filed a timely response.

That remained the posture of the case for nearly three decades. It was not until 2018 that this case was jolted out of its inertia. The matter was reassigned, and the newly assigned district judge denied Aranda's motion. The district court declined to grant a certificate of appealability ("COA") as to any claims. Aranda appeals the district court's order, seeking a COA as to only four of his claims.

## II.

Because Aranda filed his initial federal habeas petition before the enactment of the Antiterrorism and Effective Death Penalty Act (AEDPA), his claims are governed by the law as it existed before AEDPA. *Slack v. McDaniel*, 529 U.S. 473, 481 (2000). However, 28 U.S.C. § 2253(c) governs Aranda's entitlement to appellate review. *Id.* That statute provides that an appeal may not be taken "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1). To determine whether to issue a petitioner a certificate of appealability, a "court of appeals should limit its examination to a threshold inquiry into the underlying merit of his claims." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). A certificate of appealability shall be granted "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In order to make such a showing, an applicant must show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327. "[A] claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not

prevail." *Id.* at 338. Nonetheless, the issuance of a certificate of appealability "must not be *pro forma* or a matter of course." *Id.* at 337. "Because the present case involves the death penalty, any doubts as to whether a COA should issue must be resolved in [Petitioner's] favor." *Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000). Finally, as in any federal habeas case, we review "the district court's findings of fact for clear error and its conclusions of law de novo." *Sanchez v. Davis*, 936 F.3d 300, 304 (5th Cir. 2019).

## III.

Aranda seeks a certificate of appealability for four claims: (1) a *Miranda* claim; (2) a fair cross-section claim; (3) a *Strickland* claim; and (4) a *Penry* claim. We examine each claim in turn.

### A.    The *Miranda* Claim

#### 1.    *Waiver*

We first address Aranda's *Miranda* claim. Before turning to our COA analysis, we confront the threshold issue of whether Aranda waived this claim by failing to properly raise it before the district court. Because failure to raise a claim before the district court deprives us of jurisdiction to grant a COA on the issue, *see Brewer v. Quarterman*, 475 F.3d 253, 255 (5th Cir. 2006) (per curiam), we must consider whether Aranda properly raised a claim that his waiver was not knowing and intelligent below. As both parties acknowledge, an inquiry into whether a defendant has validly waived his or her *Miranda* rights has two components. First, we ask whether the waiver was voluntary; second, we ask whether the waiver was knowing and intelligent. *See United States v. Cardenas*, 410 F.3d 287, 293 (5th Cir. 2005) (citing *United States v. Andrews*, 22 F.3d 1328, 1337 (5th Cir. 1994)). Although Aranda undoubtedly raised a claim that his confession was involuntary to the district court, it is undisputed that he raises no such claim here. Rather, in seeking a COA from this court, Aranda argues that his confession was not knowing and intelligent.

The district court did not understand Aranda to raise such a claim before it. It found that "Petitioner makes no claim that his confession was not intelligently made, or that he did not understand the *Miranda* warnings when given." We find the district court erred, and Aranda's knowing-and-intelligent *Miranda* claim has not been waived.

The second claim listed in Aranda's petition stated that his "uncounseled, custodial 'confession' was improperly admitted." In paragraph forty of his petition, Aranda alleged: "The [Texas] trial court made no inquiry into, nor findings on, whether Petitioner knowingly and intelligently waived his Fifth Amendment rights. The State has the heavy burden of proving both voluntariness and a knowing and intelligent waiver of Fifth Amendment rights before an alleged confession may be admitted." In the next paragraph, Aranda noted that the state court "left unassessed" evidence that "he did not understand the waiver form printed in English; that he was not aware that he was being interrogated in connection with a capital murder charge; and that he was not sufficiently recovered from the surgery of earlier that day to assess intelligently the consequences of a waiver presented him late that night." Aranda concluded the claim by arguing that he "did not voluntarily give the statement touted as a 'confession' nor did he make an independent and informed decision to waive his right to counsel and his right not to provide testimony against himself."

Aranda's other briefing emphasized a *Miranda* claim based on a lack of knowing-and-intelligent waiver. In his opposition to the State's motion for summary judgment he stated, "Most notably, Respondent's motion . . . does not address the issue of whether Petitioner made a knowing and intelligent waiver of his Fifth Amendment rights upon making his alleged 'confession' while in custody." And in his motion to alter or amend the judgment, Aranda again stressed that he had raised this claim.

In short, Aranda made the basis of his *Miranda* claim adequately clear in his petition and in his subsequent briefing. The State quarrels that Aranda's petition was insufficiently lucid on this point, or that Aranda's allegations are only conclusory, or that this claim was addressed only briefly compared to Aranda's involuntary waiver claim. But as described above, Aranda's petition (and subsequent briefing) adequately stated a claim that he did not waive his *Miranda* rights knowingly and voluntarily. And this case is unlike other cases where we have found waiver, which often include stark examples of conclusory or altogether nonexistent briefing on claims. *See, e.g.*, *Ross v. Estelle*, 694 F.2d 1008, 1011–12 (5th Cir. 1983) (per curiam) (holding that "mere conclusory allegations" which were unsupported by any record evidence in a pro se defendant's petition did not raise a constitutional issue); *Ortiz v. Quarterman*, 509 F.3d 214, 215 (5th Cir. 2007) (per curiam) (holding that a petitioner waived an ineffective assistance of counsel claim when he failed to raise the claim in his brief in support of a COA).

Here, the district judge *sua sponte* denied a COA to Aranda, stating it "will not certify any issue for review by the Fifth Circuit." "[W]hen a district court *sua sponte* denies a COA without indicating the specific issues, we have treated each of the issues raised in the habeas petition as included within the denial." *Black v. Davis*, 902 F.3d 541, 546 (5th Cir. 2018). Accordingly, because we find that Aranda sufficiently raised this claim before the district court, we find that the district court's denial of a COA covered this claim and that we have jurisdiction to address whether we should grant a COA.

2.    *Miranda Claim COA*

We now address whether we should grant a COA on Petitioner's *Miranda* claim that his waiver was not knowing and intelligent.

6

The State first argues that there is no "believable evidence" in the record that undermines Petitioner's written waiver and which demonstrates a *Miranda* violation. But the record contains evidence to support Aranda's claims, including evidence that he did not realize that he was being charged with capital murder, evidence that he had limited ability to speak and understand English, and evidence of his injuries from surgery earlier in the day. In light of this evidence, jurists of reasons could debate whether Petitioner's *Miranda* claim has merit. In this "threshold inquiry," we cannot deny Aranda a COA on this ground. *Miller-El*, 537 U.S. at 327.

The State next argues that the state court's findings regarding Petitioner's *Miranda* claim are entitled to a presumption of correctness and should be dispositive here. The version of 28 U.S.C. § 2254 that was in place at the time Aranda filed his petition stated that in federal habeas cases, "a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding [and] evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct" subject to certain exceptions. 28 U.S.C. § 2254(d) (1988). But the sole written opinion that the State points us to addresses only whether Aranda's claim was voluntary. And although the trial court held a hearing addressing many of Aranda's arguments here and orally ruled in favor of the State by allowing the confession into the record, "reasonable jurists [could] find [that] the district court's assessment of the constitutional claims [is] debatable or even wrong." *Miller-El*, 537 U.S. at 338 (quotation omitted).

Finally, the State argues that even if there was *Miranda* error, it was harmless because the State produced overwhelming evidence of Aranda's guilt other than the confession. But assessing whether any *Miranda* error was harmless would require us to assume a constitutional error and delve into the merits of Aranda's claim, which is beyond the "threshold inquiry" we engage

in at this stage. *Miller-El*, 537 U.S. at 327. In any event, jurists of reason could debate whether any constitutional error was harmless, particularly because "confessions have a profound impact on the jury." *Bruton v. United States*, 391 U.S. 123, 140 (1968) (White, J., dissenting).

In sum, at this stage Aranda has demonstrated that jurists of reason could disagree with the district court's resolution of his *Miranda* claim. We therefore grant a COA as to this claim.

### B.    The Fair Cross-Section Claim

We turn next to Aranda's fair cross-section claim. Before addressing this claim, we specifically note what we need *not* address: any supposed claim that Aranda made—under the Vicinage Clause or otherwise—that a defendant has a right to be tried in the jurisdiction where the crime occurred or a jurisdiction with an identical racial makeup. Aranda renounced seeking a COA on such a claim in his reply. Rather, we need only consider Aranda's claim insomuch as he argues that Victoria County systematically excluded Hispanics in its jury selection process and at his trial.

As the parties agree, Aranda's fair cross-section claim arises under *Duren v. Missouri*, 439 U.S. 357 (1975). Under the test the Supreme Court announced in *Duren*, to establish a fair cross-section claim, a petitioner must demonstrate: "(1) that the group alleged to be excluded is a 'distinctive' group in the community, (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury selection process." *Id*. at 364.

Here, the question is whether jurists of reason could debate that Aranda is able to demonstrate that the percentage of the community made up of Hispanics was underrepresented on his jury venire and that this

underrepresentation was the general practice on other venires. *United States v. Williams*, 264 F.3d 561, 568 (5th Cir. 2001). The sole affidavit on which Aranda bases his cross-section claim focuses on underrepresentation of Hispanics on *his* venire, but does not demonstrate that any such underrepresentation was the general practice on other venires in Victoria County. *See United States v. Brummitt*, 665 F.2d 521, 529 (5th Cir. 1981).

But even had Aranda properly called into question whether there was underrepresentation of Hispanics on Victoria Country venires generally, jurists of reason could not debate his fair cross-section claim for a separate, independent reason. This Circuit has repeatedly held that an absolute disparity of less than ten percent is not sufficient to demonstrate underrepresentation. *See United States v. Maskeny*, 609 F.2d 183, 190 (5th Cir. 1980); *see also United States v. Age*, No. 16-cr-32, 2021 WL 2227244, at *10–11 (E.D. La. June 2, 2021) (collecting cases). "Absolute disparity measures the difference between the proportion of the distinctive groups in the population from which the jurors are drawn and the proportion of the groups on the jury list." *United States v. Yanez*, 136 F.3d 1329, 1998 WL 4454, at *2 n.4 (5th Cir. 1998). The absolute disparity that Aranda alleges here is less than ten percent. He resists this conclusion by citing to *Berghuis v. Smith*, 559 U.S. 314 (2010), which he argues stands for the proposition that the absolute disparity test should not be used. But *Berghuis* said no such thing; rather, the Court only recognized multiple ways to measure the representation of distinctive groups in jury pools and acknowledged that "[e]ach test is imperfect." *Id.* at 329.

Jurists of reason could not find that Aranda's fair cross-section claim is debatable. We do not issue a COA for this claim.

C.    The *Strickland* Claims

No. 20-70008

In his next claim, Aranda argues that he was denied effective assistance of counsel in violation of the Sixth Amendment under *Strickland v. Washington*, 466 U.S. 668 (1984). Ineffective assistance of counsel claims are reviewed under *Strickland*'s two-prong test. First, Aranda must demonstrate that his counsel's performance was deficient. *Id.* at 687. To establish deficient performance, Aranda must show "that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. This is an uphill battle, as we apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. As to the second prong, Aranda must demonstrate that that the deficient performance prejudiced the defense. *Id.* at 687. In a death penalty case, "the question is whether there was a reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigation circumstances did not warrant death." *Id.* at 695. "Prejudice exists when the likelihood of a different result is 'substantial, not just conceivable.'" *Trottie v. Stephens*, 720 F.3d 231, 241 (5th Cir. 2013) (quoting *Harrington v. Richter*, 526 U.S. 86, 112 (2011)). We are also mindful that "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). But as Aranda faces the death penalty, we continue to resolve any doubts as to whether a COA should issue in his favor. *Rhoades v. Davis*, 852 F.3d 422, 427 (5th Cir. 2017).

On appeal, Aranda alleges deficient performance of his counsel in three ways. First, he contends that his counsel failed to adequately investigate available defenses, primarily by failing to investigate and present evidence that was admitted at his brother Juan Aranda's trial. Second, he argues that his counsel failed to adequately investigate evidence of mitigation, such as evidence that Aranda had a difficult upbringing or a possible brain injury. Third, he presses that his counsel failed to investigate an extraneous offense. We address each argument in turn.

10

No. 20-70008

Aranda's argument that his counsel failed to adequately investigate defenses largely turns on the fact that his counsel did not introduce evidence that was used at Juan Aranda's trial. "To prevail on an ineffective assistance of counsel claim based upon uncalled witnesses, an applicant must name the witness, demonstrate that the witness would have testified, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable." *Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010). These claims are disfavored. *Id.*

Aranda contends that if his counsel had adequately investigated possible defenses, he would have called Jorge Martinez, C. D. Toler, and R. Benavides. But Aranda fails to set out exactly what those witnesses would have testified to, beyond a vague reference to "Officer Viera's propensity for violence." Although Aranda argues that counsel should have introduced a series of facts about Viera's propensity for violence, it is completely unclear from Defendant's briefing which of the three witnesses should have testified about those facts. And Aranda's sole citation to the record is the witness list from Juan Aranda's trial, which is insufficient. *See, e.g.*, *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000). Because Aranda has not demonstrated that the witnesses would have testified, set out witnesses' proposed testimony, or shown that it would have been favorable, reasonable jurists could not debate that this claim fails. *See Gregory*, 601 F.3d at 352.

There are other issues with this claim. First, counsel did attempt to call Martinez, but the trial court would not allow him to testify. Second, in Juan Aranda's trial, the judge refused to allow Benavides or Toler to testify, and Petitioner offers no reason to think there would be a different result in his trial. Third, and most important, Aranda's counsel made a strategic decision not to present this evidence. In his affidavit, Aranda's counsel states that he chose not to introduce some available evidence from Juan Aranda's trial because he wanted to emphasize the defense of self-defense.

"Generally, counsel's strategic decisions are afforded deference so long as they are based on counsel's 'professional judgment.'" *Escamilla v. Stephens*, 749 F.3d 380, 392 (5th Cir. 2014) (quoting *Strickland*, 446 U.S. at 680). Although Aranda argues we should not defer to his attorney's decision because his claim involves a failure to investigate, *see id.*, the record illustrates that his attorney was sufficiently informed of the circumstances of Juan Aranda's trial. In light of these serious infirmities in this claim, reasonable jurists could not debate that it fails.

Next, Aranda argues that his counsel failed to investigate and present mitigation evidence at the sentencing stage of trial. He presses that had counsel adequately investigated Aranda's past, he would have presented evidence of Aranda's troubled upbringing and his past violent experience with law enforcement, which resulted in a head injury. The Supreme Court has held that failure to adequately investigate available mitigating evidence may amount to ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 524–25, 537–38 (2003) (holding that a defense counsel's failure to investigate a capital defendant's social history and traumatic childhood constituted ineffective assistance of counsel); *see also Williams v. Taylor*, 529 US. 362, 395–98 (2000) (holding that defense counsel's performance fell below an objective standard of reasonableness where counsel failed to present mitigating evidence related to a defendant's troubled upbringing and intellectual disability). Here, Aranda's counsel was forthright that he "did not conduct any extensive investigation of Mr. Aranda's background for the purpose of developing specific evidence of disorders caused by his background." Because this evidence is like that discussed by the Supreme Court in *Wiggins* and *Williams*, reasonable jurists could debate the district court's conclusion that counsel was effective.

Reasonable jurists could also conclude that the district court's prejudice assessment was debatable or incorrect. If Aranda's counsel had

reasonably investigated Aranda's background, the jury may have learned of Aranda's deeply troubled upbringing, his early, violent experience with law enforcement, and the life-altering effects of his head injury. A jury presented with such evidence may not have determined that Aranda was a future danger to society or that he acted deliberately, two of the factors Texas juries had to consider at the sentencing stage. Reasonable jurists could therefore debate whether the district court's prejudice determination was correct. At a minimum, this claim "deserves encouragement to proceed further." *Escamilla*, 749 F.3d 393–94. Accordingly, we will grant a COA as to this *Strickland* claim.

Finally, we turn to Aranda's argument that his counsel failed to research infirmities in his aggravated rape conviction, which was an aggravating offense at his murder trial. Aranda's briefing on this topic is perfunctory, and he cites solely to the affidavit of his trial counsel, which states that he knew about the conviction but was unaware of purported legal infirmities with the conviction. Even assuming that counsel's performance was deficient for not investigating any legal infirmities in Aranda's aggravated rape conviction, Aranda is unable to establish that jurists of reason would debate this issue, given the lack of any indication in the briefing that the more fulsome objection would have been any more valid than the one raised. Texas law permits broad introduction of extraneous prior convictions at the sentencing phase, and our court has sustained even consideration of non-final convictions and "extraneous offenses." *See* Tex. Code of Crim. Proc. § 37.07; *Hogue v. Johnson*, 131 F.3d 466, 478 n.9 (5th Cir. 1997) ("[n]othing in Article 37.071 . . . requires that there be a final conviction for an extraneous offense to be admissible at the punishment phase."); *Hammett v. State*, 578 S.W.2d 699, 709 (Tex. Crim. App. 1979) (same), *cert. withdrawn*, 448 U.S. 725 (1980)); *see also Williams v. Lynaugh*, 814 F.2d 205, 208 (5th Cir. 1987), *cert denied.*, 484 U.S. 935 (1987) (holding that "the admission of

unadjudicated offenses in the sentencing phase of a capital trial does not violate" the Constitution because "[e]vidence of these unadjudicated crimes is clearly relevant to the jury's task of determining whether there is a probability that [the defendant] would continue to commit acts of violence as required by" special questions); *see also Harris v. Johnson*, 81 F.3d 535, 541 (5th Cir. 1996) ("use of evidence of unadjudicated extraneous offenses, at the sentencing phase of Texas capital murder trials, does not implicate constitutional concerns"). Accordingly, we deny a COA as to this portion of the ineffective assistance of counsel claim.

We find that Aranda has carried his burden to demonstrate that reasonable jurists would debate whether his counsel's performance was ineffective in failing to investigate and introduce evidence of mitigating circumstances and such a failure was prejudicial. We therefore grant a COA as to this *Strickland* claim. Because Aranda has failed to demonstrate reasonable jurists could debate the viability of his other *Strickland* claims, we deny a COA on those claims.

## D.    The *Penry* Claim

Finally, we address Aranda's claim under *Penry v. Lynaugh*, 492 U.S. 302 (1989). At the time of Aranda's sentencing, the Texas jury was required to determine a defendant's capital sentence by answering three special issue questions:

> (1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;

> (2) whether there is a probability that the defendant would commit criminal acts of

No. 20-70008

> violence that would constitute a continuing threat to society; and
>
> (3) if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased.

*Penry*, 492 U.S. at 310 (citing Tex. Code Crim. Proc. art. 37.071(b) (Vernon 1981 and Supp. 1989). If the jury answered "yes" to these questions, the trial court would impose the death penalty.

Although the facial validity of the statute was upheld by the Supreme Court, *see Jurek v. Texas*, 428 U.S. 262 (1976), the Court later held that in certain circumstances a jury may be unable to fully consider and give effect to mitigating evidence in answering the special issue questions. *Penry*, 492 U.S. at 328. If the jury was provided "no vehicle for expressing its 'reasoned moral response' to [mitigating] evidence" then the sentencing is incompatible with the Eighth Amendment. *Id.* (quoting *Franklin v. Lynaugh*, 487 U.S. 164, 185 (1988) (O'Connor, J., concurring)).

In *Coble v. Quarterman*, 496 F.3d 430 (5th Cir. 2007), this circuit fashioned a useful two-step process for considering *Penry* claims. First, we must determine whether the mitigating evidence presented by Petitioner "satisfied the 'low threshold for relevance' articulated by the Supreme Court." *Id.* at 444 (quoting *Tennard v. Dretke*, 542 U.S. 274 (2004)). "The Court defined relevant mitigating evidence as 'evidence which tends logically to prove or disprove some fact or circumstance which a fact-finder could reasonably deem to have mitigating value.'" *Id.* (quoting *Tennard*, 542 U.S. at 284). The Court later cautioned that a *Penry* claim is not applicable "when mitigating evidence has only a tenuous connection—'*some* arguable relevance'—to defendant's moral culpability." *Abdul-Kabir v. Quarterman*,

15

550 U.S. 233, at 252–53 n.14 (quoting *Penry*, 492 U.S. at 322–23).  If the evidence passes this relevancy threshold, we must next "determine whether there was a reasonable likelihood that the jury applied the special issues in a manner that precluded it from giving meaningful consideration and effect to all of [Petitioner's] mitigating evidence."  *Coble*, 496 F.3d at 444.

Aranda identifies four categories of mitigating evidence which he contends could not have been given meaningful consideration by the jury: (1) evidence of Aranda's intoxication at the time of the shooting, (2) evidence that Aranda had no foreknowledge about transporting drugs, (3) evidence that Aranda remained unarmed until he retrieved the drugs, and (4) evidence that the victim had a hand on his own gun when Aranda shot him.  We address each category in turn.

Jurists of reason could not debate that Aranda's intoxication does not pass even the low threshold for relevance.  The record is clear that Aranda had a single beer at the first bar he patronized.  That is the only record evidence Aranda points to that he was drinking on the night in question.  Although Juan Aranda left his brother alone for some period of time, he testified that when he returned he believed Petitioner "had a glass of water or Seven-Up."  This evidence of intoxication is so slight that it is "tenuous" at best.  And because jurists of reason would not debate that this evidence does not "satisf[y] the 'low threshold for relevance' articulated by the Supreme Court," *Coble*, 496 F.3d at 444, it cannot be the basis for a *Penry* claim.

Likewise, because Aranda relies on inference piled on inference, jurists of reason could not debate the two categories of evidence proffered by Aranda, which we consider together.  Aranda argues that his lack of knowledge regarding the drug transaction and the fact he remained unarmed until picking up the drugs support a *Penry* claim.  But these claims both rely

on a series of inferences that the jury would have to make to reach considerations other than residual doubt that are not incorporated into the special issues questions.  For example, from the fact Aranda did not know about the drug transaction before engaging in it, Aranda would have a juror infer that his brother was the mastermind behind his drug transaction;  from this, Aranda would have the jury infer that his brother was always the mastermind when the two brothers were together; from this, Aranda would have the jury infer that he had a docile personality and took orders from this brother; and from this fact, Aranda would have the jury determine that he deserved a sentence less than death.  Petitioner's argument regarding the evidence that he was unarmed until he secured the drugs likewise relies on an extensive and dubious inferential chain.  Even viewed in the light most favorable to Petitioner, these arguments amount to rank speculation.  Jurists of reason could not debate that these arguments—which are based on layer upon layer of inferences (many of which include suggested logical leaps)—do not even have a "tenuous" connection to moral culpability.

Finally, Petitioner argues that evidence that Officer Albidrez's hand was placed on his weapon when he approached Aranda's car could not be given meaningful consideration by the jury at the punishment phase.  But this evidence is primarily relevant to residual doubt about Aranda's self-defense claim, which cannot be the basis of a *Penry* claim.  *See Abdul-Kabir*, 550 U.S. at 251.  And to the extent this evidence has any relevance beyond residual doubt, it could be fully considered within the special issue questions presented to the Texas jury.  Indeed, the third special question specifically required the jury to consider "[w]hether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased." *Penry*, 492 U.S. at 310.  Accordingly, jurists of reason could not find that this claim succeeds.

17

In sum, reasonable jurists could not debate that Aranda has failed to demonstrate a *Penry* claim. We decline to issue a COA as to this claim.

## IV.

For the foregoing reasons, Petitioner's request for a certificate of appealability as to his *Miranda* claim and as to his *Strickland* claim regarding his counsel's failure to investigate and introduce evidence of mitigating circumstances is GRANTED. Petitioner's request for a certificate of appealability is otherwise DENIED.